Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation,<br><br>    Plaintiffs,<br><br>vs.<br><br>DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, an individual,<br><br>    Defendants. | Case No.: 4:25-cv-00298-AKB<br><br><br>PLAINTIFFS' CONSENT MOTION FOR ENTRY OF THIRD AMENDED COMPLAINT |

Pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure, Plaintiffs, ABC IP, LLC and Rare Breed Triggers, Inc., hereby move, with written consent of Defendants, DNT LLC d/b/a Deez Nutz Tactical and Zach Morrow, for the entry of the attached Third Amended Complaint and exhibits. With the entry of these documents, the Third Amended Complaint adds allegations related to infringement of U.S. Patent 7,398,723 ("the '723 Patent").

Attached hereto, pursuant to the requirements of Dist. Idaho Loc. Civ. R. 15.1, is a clean copy of the proposed Third Amended Complaint together with a blackline copy identifying the differences from the prior Second Amended Complaint.

DATED: October 15, 2025.

/s/ Jared W. Allen
Jared W. Allen
Of Beard St. Clair Gaffney PA
Attorney for Plaintiffs

## CERTIFICATE OF SERVICE

I certify I am a licensed attorney in the state of Idaho and on October 15, 2025, I filed the foregoing *Plaintiffs' Consent Motion for Entry of Third Amended Complaint* using the CM/ECF system and caused the same to be served upon the following by electronic means:

Joyce A. Hemmer
Elam & Burke, P.A.
jah@elamburke.com

John M. Skeriotis
Emerson, Thomson & Bennett, LLC
jms@etblaw.com

/s/ Jared W. Allen
Jared W. Allen
Of Beard St. Clair Gaffney PA
Attorney for Plaintiffs

Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Attorney for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | |
| Plaintiffs, | Case No.: 4:25-cv-0298-AKB |
| vs. | |
| DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, an individual, | THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| Defendants. | |

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse DNT LLC, d/b/a Deez Nutz Tactical ("Deez Nutz") and Zach Morrow ("Morrow") (collectively, "Defendants"), of infringing U.S. Patent No. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723 Patent") as follows:

**PARTIES**

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Deez Nutz is a limited liability company existing under the laws of the state of Idaho and has a place of business at 354 Chateau Drive, Idaho Falls, ID 83404.

4.      Morrow is an individual residing at 354 Chateau Drive, Idaho Falls, ID 83404, and is the sole member of and operates Deez Nutz.

5.      Upon information and belief, Morrow operates Deez Nutz from his residence.

**JURISDICTION AND VENUE**

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

## BACKGROUND

10.    This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent and the '723 Patent are attached hereto as Exhibits A and B, respectfully.

11.    The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

12.    The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

13.    The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance Fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

14.    ABC is the current assignee and owner of all right, title and interest in and to the '247 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.    The '723 Patent expired on September 22, 2024.

16.    Rare Breed is the exclusive licensee of the '247 and '723 Patents.

17.    Upon information and belief, Defendants have committed acts of contributory and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.    On March 31, 2025, counsel for ABC sent a cease and desist demand letter to Deez Nutz, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

19.    Additionally, on information and belief, Defendants have committed contributory and induced infringement of U.S. Patent No. 7,398,723 ("the '723 Patent") prior to its expiration.

## The Invention

20.    The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

21.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

22.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced

by the trigger member being pulled by the user. The trigger member releases the hammer from the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed to return forward into battery with a new round inserted into the chamber. While this is happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in which the sear, rather than the disconnector, engages and holds the hammer in a cocked position. When the user reduces pressure on the trigger member to allow the trigger spring to reset the trigger member, the disconnector releases the hammer to engage the trigger sear.

23.    In the standard AR-pattern trigger assembly, the purpose of the disconnector is to hold the hammer in a cocked position until the trigger member is reset by a trigger spring when the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to manually reset the trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it returns to battery without firing a second round, leaving the hammer uncocked.

24.    In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt causes the trigger member to be forced to the reset position and locks the trigger member in this position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the trigger again, without the need for a disconnector.

25.     The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

26.     The '723 Patent claims a method of accelerating the firing cycle of a semiautomatic firearm. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

27.     The '247 Patent relates to a semiautomatic trigger mechanism that represents an improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

28.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

## The Infringing Devices

29.     On information and belief, Defendants have and are currently making, importing, using, selling, and/or offering for sale a "Super Safety" ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

30.    On information and belief, Defendants made, imported, used, sold, and/or offered for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to its expiration.

31.    On information and belief, Defendants have made or had made for them, imported, used, sold or offered for sale the Infringing Device via the Deez Nutz Tactical website, the Deez Nutz Tactical Facebook page, and numerous private Facebook groups.  Exemplary photographs of these are shown below:





32.    Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 and '723 Patents.

33.    Defendants also sell or are offering to sell precut triggers, which are specially designed triggers for use with a "Super Safety" (3 Position), in addition to spare "Super Safety" cam levers, both shown below.





34.    In addition, Defendants are selling or offering to sell products called the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit", which are "Super Safety" (3 Position) kits specially designed for the DB9 platform. When installed as instructed via a link provided on Defendants' website, (https://odysee.com/@M1ke843:f/DB-9-Alloy-standoff-ss-remix:d), the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit" are covered by the '247 and '723 Patents.



35.     Further, Defendants are selling or offering to sell a product called the "DB9 Titanium Trip Bar", which is not a standard component intended for use with a traditional fire control group. Rather, it is specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device in a DB9 platform. They are offering the "DB9 Titanium Trip Bar" not only for use with devices they have sold directly, but also for use with "Super Safety" products made or sold by others. As such, the "DB9 Titanium Trip Bar" constitutes a material part of the invention claimed in the '247 and '723 Patents, is not a staple article or commodity of commerce suitable for substantial noninfringing use and is intended to be assembled into an infringing device.



36.     Defendants are selling or offering to sell "Centering Blocks," which are specially designed parts exclusively used in conjunction with the cam lever of a "Super Safety" (3 Position). These "Centering Blocks" are not standard components intended for use with a traditional fire control group. Rather, they are specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device. Defendants are offering these "Centering Blocks" not only for use with devices it has sold directly, but also for use with "Super Safety" products made or sold by others. As such, these "Centering Blocks" constitute a material part of the inventions claimed in the '247 and '723 Patents, are not staple articles or commodities

of commerce suitable for substantial noninfringing use and are intended to be assembled into infringing devices.



37.     Defendants are also selling or offering to sell products referred to as the "Jig" and the "Go/No-Go Gauge." These items are not standard tools or components intended for general use. Rather, they are specially designed and manufactured solely to assist others in modifying existing parts so they can specifically be used in connection with the "Super Safety" (3 Position) device, resulting in an infringing assembly. The "Jig" and "Go/No-Go Gauge" serve no substantial noninfringing use and exist only to facilitate the creation of infringing devices.



38.     Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

39.     These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The Defendants know that these are especially made or especially adapted for use in an infringement of the '247 and '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

40.     These parts cannot be used in any manner that avoids infringement of the '247 and '723 Patents. The Infringing Devices and associated kits are not staple articles or commodities of commerce suitable for substantial noninfringing use and have no real utility outside the infringing combination or method described in the '247 and '723 Patents.

41.     Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

42.     Defendants instruct purchasers to assemble the Infringing Devices in a way that induces infringement of the '247 and '723 Patents.

43.     The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

44.     The user can slide the cam between safe and fire (forced reset semiautomatic with locking bar) modes.

45.     Defendants also sell "D2 Complete FCG Curved SS Kit,", and "D2 Complete FCG Flat Super Safety Kit". Images of these products (Infringing Devices) are reproduced below.



Both of these items are described as "Everything you need to swap out your cassette style trigger for a Super Safe setup. Includes the usual super safety and precut trigger, as well as a complete fire control group including springs, hammer and trigger pins, disconnector and spring."

46.     The "D2 Complete FCG Curved SS Kit" and "D2 Complete FCG Flat Super Safety Kit" each include all the components of the patented combination claims and, thus, directly infringe the '247 Patent contributorily infringe and/or induce infringement of the '723 Patent.

47.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and contributorily infringe and/or induce infringement of the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

48.    In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

### COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

49.    The allegations set forth in paragraphs 1-48 are fully incorporated into this First Count for Relief.

50.    Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

51.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br> |

| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.<br><br> |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector.<br><br><br><br>The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier |



Hammer Set Position



Hammer Released Position

| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear.<br><br><br><br>Trigger Member Set Position |
|---|---|



Trigger Member Released Position

| | |
|---|---|
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br><br><br>Hammer and Trigger Member in Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br><br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe. |

| | |
|---|---|
| movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position.<br><br><br>Cam Lobe First Position<br><br><br>Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set | In the standard semi-automatic mode, the cam is a first position for at least part of the cycle. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches the hammer hook. |

positions so that the user can pull said trigger member to fire the firearm, and



Cam in Standard Semiautomatic Disconnector Mode



Thereafter, the bolt carrier moves forward into battery, at which time a user must manually release the trigger member to free said hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull said trigger member to fire the firearm.



Third Amended Complaint for Patent Infringement   19

| | |
|---|---|
| whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. | When in the forced reset semi-automatic mode, the cam is in a second position for at least part of the cycle.<br><br>Cam In Forced Reset Semiautomatic Mode<br><br>Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.<br><br>Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm. |



52.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

53.     The Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively induces infringement of the '247 Patent.

54.     Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

55.     Accordingly, Defendants' sell and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

56.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

57.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

58.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

59.     The allegations set forth in paragraphs 1-58 are fully incorporated into this Second Count for Relief.

60.     Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

61.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart in paragraph 42, above.

62.     Defendants' sell and/or offer to sell the Infringing Device "D2 Complete FCG Curved SS Kit" and the "D2 Complete FCG Flat Super Safety Kit." As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent under 35 U.S.C. § 271(a).

63.     Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

64.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

65.     Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

66.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

COUNT III – INDIRECT INFRINGEMENT OF THE '723 PATENT

67.     The allegations set forth in paragraphs 1-66 are fully incorporated into this Second Count for Relief.

68.     Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

69.     An image of the deeznutztactical.com website archived by Archive.org (https://deeznutztactical.com/product-category/3/) reproduced below shows that Defendants were selling or offering for sale the Infringing Devices at least as of August 5, 2024.



70.     An exemplary comparison of the Infringing Device with claim 1 of the '723

Patent when assembled and used as intended and instructed is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as intended and instructed, the Infringing Device allows the user to use a method that accelerates the firing cycle of a semi-automatic firearm. |
| depressing a firearm trigger with a finger to discharge the firearm; | When installed and used as intended and instructed, the user depressing the trigger with a finger causes the firearm to discharge.<br> |
| activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position | When the firearm is discharged, a reciprocating mechanism (bolt or bolt carrier assembly) within the firearm is activated, it causes the cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position. |



| | |
|---|---|
| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The trigger is held forward in the ready to fire position by the cam until the reciprocating mechanism (bolt or bolt carrier) until the reciprocating mechanism has reached an approximately closed, ready to fire position. |

71.     Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

72.     When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

73.    The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

74.    Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

75.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

76.    Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

77.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs' respectfully request that this Court enter:

a.    A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent and the '723 Patent (prior to expiration);

b.    A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

     c.     A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

     d.     A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

     e.     Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

## **DEMAND FOR JURY TRIAL**

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED:

_____
Jared W. Allen
Beard St. Clair Gaffney PA
Attorneys for Plaintiffs

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 30 of 139



US012038247B2

(12) **United States Patent**
    Blakley

(10) Patent No.: **US 12,038,247 B2**
(45) Date of Patent: **Jul. 16, 2024**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Brian A. Blakley**, Pinellas Park, FL (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/325,225**

(22) Filed: **May 30, 2023**

(65) **Prior Publication Data**

US 2024/0085136 A1     Mar. 14, 2024

**Related U.S. Application Data**

(60) Provisional application No. 63/374,941, filed on Sep. 8, 2022.

(51) **Int. Cl.**
    **F41A 19/45**     (2006.01)
    **F41A 17/46**     (2006.01)
    (Continued)

(52) **U.S. Cl.**
    CPC .............. **F41A 19/45** (2013.01); **F41A 17/46** (2013.01); **F41A 19/10** (2013.01); **F41A 19/16** (2013.01); *F41A 19/15* (2013.01)

(58) **Field of Classification Search**
    CPC .......... F41A 19/10; F41A 19/45; F41A 19/15; F41A 17/46
    (Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,765,562 A     10/1956     Roper et al.
3,045,555 A     7/1962     Stoner
(Continued)

FOREIGN PATENT DOCUMENTS

DE     582963 C     8/1933
DE     4008351 A1     9/1991
(Continued)

OTHER PUBLICATIONS

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).

*Primary Examiner* — Reginald S Tillman, Jr.
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57)     **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a cam, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from a first position to a second position such that a cam lobe forces the trigger member towards the set position, but prior to reaching the set position the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**23 Claims, 18 Drawing Sheets**



(51) **Int. Cl.**
| | | |
|---|---|---|
| *F41A 19/10* | (2006.01) | |
| *F41A 19/15* | (2006.01) | |
| *F41A 19/16* | (2006.01) | |

(58) **Field of Classification Search**
USPC ............................................. 42/69.01, 69.03
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,292,492 A | 12/1966 | Sturtevant |
| 3,301,133 A | 1/1967 | Sturtevant |
| 3,670,442 A | 6/1972 | Kennedy et al. |
| 4,023,465 A | 5/1977 | Inskip |
| 4,057,003 A | 11/1977 | Atchisson |
| 4,151,670 A | 5/1979 | Rath |
| 4,276,808 A | 7/1981 | York |
| 4,433,610 A | 2/1984 | Tatro |
| 4,463,654 A | 8/1984 | Barnes et al. |
| 4,516,466 A | 5/1985 | Jennie |
| 4,580,484 A | 4/1986 | Moore |
| 4,656,993 A | 4/1987 | Yuzawa et al. |
| 4,658,702 A | 4/1987 | Tatro |
| 4,693,170 A | 9/1987 | Atchisson |
| 4,697,495 A | 10/1987 | Beretta |
| 4,787,288 A | 11/1988 | Miller |
| 4,937,964 A | 7/1990 | Crandall |
| 5,149,898 A | 9/1992 | Chesnut et al. |
| 5,183,959 A | 2/1993 | McCoan et al. |
| 5,223,649 A | 6/1993 | Claridge |
| 5,339,721 A | 8/1994 | Beretta |
| 5,517,897 A | 5/1996 | Perrine |
| 5,614,691 A | 3/1997 | Taylor |
| 5,623,114 A | 4/1997 | Soper |
| 5,682,699 A | 11/1997 | Gentry |
| 5,701,698 A | 12/1997 | Wesp et al. |
| 5,704,153 A | 1/1998 | Kaminski et al. |
| 5,760,328 A | 6/1998 | Robbins |
| 5,770,814 A | 6/1998 | Ealovega |
| 6,101,918 A | 8/2000 | Akins |
| 6,360,467 B1 | 3/2002 | Knight |
| 6,601,331 B2 | 8/2003 | Salvitti |
| 6,718,680 B2 | 4/2004 | Roca et al. |
| 6,722,072 B1 | 4/2004 | McCormick |
| 6,851,346 B1 | 2/2005 | Herring |
| 6,889,459 B1 | 5/2005 | Salvitti |
| 6,976,416 B2 | 12/2005 | Ealovega |
| 7,051,638 B2 | 5/2006 | Thomele |
| 7,162,824 B1 | 1/2007 | McCormick |
| 7,213,359 B2 | 5/2007 | Beretta |
| 7,293,385 B2 | 11/2007 | McCormick |
| 7,337,574 B2 | 3/2008 | Crandall et al. |
| 7,347,021 B1 | 3/2008 | Jones |
| 7,398,723 B1 | 7/2008 | Blakley |
| 7,421,937 B1 | 9/2008 | Gangl |
| 7,634,959 B2 | 12/2009 | Frickey |
| 7,661,220 B2 | 2/2010 | Crandall et al. |
| 7,806,039 B1 | 10/2010 | Gomez |
| 8,037,805 B1 | 10/2011 | Neroni |
| 8,112,928 B2 | 2/2012 | Keough |
| 8,127,658 B1 | 3/2012 | Cottle |
| 8,156,854 B2 | 4/2012 | Brown |
| 8,443,537 B2 | 5/2013 | Curry |
| 8,464,454 B2 | 6/2013 | Martin et al. |
| 8,490,309 B2 | 7/2013 | Zukowski |
| 8,667,881 B1 | 3/2014 | Hawbaker |
| 8,695,477 B2 | 4/2014 | Esch |
| 8,720,096 B2 | 5/2014 | Siddle |
| 8,820,211 B1 | 9/2014 | Hawbaker |
| 8,893,607 B2 | 11/2014 | Audibert et al. |
| 8,925,234 B1 | 1/2015 | Barrett |
| 8,985,006 B1 | 3/2015 | Christensen et al. |
| 9,016,187 B1 | 4/2015 | Findlay |
| 9,021,732 B2 | 5/2015 | Johnson |
| 9,021,733 B1 | 5/2015 | DiChario |
| 9,052,150 B2 | 6/2015 | Talasco |
| 9,121,661 B2 | 9/2015 | Calvete |
| 9,146,066 B1 | 9/2015 | Cason |
| 9,146,067 B2 | 9/2015 | Stakes |
| 9,182,189 B2 | 11/2015 | Seigler |
| 9,228,786 B2 | 1/2016 | Sullivan et al. |
| 9,310,150 B1 | 4/2016 | Geissele |
| 9,347,726 B1 | 5/2016 | Thomas |
| 9,448,023 B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 B2 | 10/2016 | Potter et al. |
| 9,513,076 B2 | 12/2016 | Kolev et al. |
| 9,568,264 B2 | 2/2017 | Graves |
| 9,618,288 B2 | 4/2017 | Wilson |
| 9,618,289 B1 | 4/2017 | Geissele |
| 9,625,231 B1 | 4/2017 | Hass |
| 9,631,886 B2 | 4/2017 | Findlay |
| 9,651,329 B2 | 5/2017 | Hittmann |
| 9,658,007 B2 | 5/2017 | Withey |
| 9,683,800 B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 B1 | 8/2017 | Sylvester et al. |
| 9,759,504 B2 | 9/2017 | Geissele |
| 9,777,980 B2 | 10/2017 | Heizer |
| 9,810,493 B2 | 11/2017 | Fluhr et al. |
| 9,810,496 B2 | 11/2017 | Kolev et al. |
| 9,816,772 B2 | 11/2017 | Graves |
| 9,829,263 B2 | 11/2017 | Bonner |
| 9,835,398 B2 | 12/2017 | Biegel |
| 9,863,730 B2 | 1/2018 | Elftmann |
| 9,869,522 B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 B2 | 1/2018 | Zajk et al. |
| 9,927,197 B1 | 3/2018 | Geissele |
| 9,939,221 B2 | 4/2018 | Graves |
| 10,002,500 B2 | 6/2018 | Hall et al. |
| 10,006,734 B1 | 6/2018 | Findlay |
| 10,030,924 B1 | 7/2018 | Smith |
| 10,077,960 B2 | 9/2018 | Geissele |
| 10,107,580 B2 | 10/2018 | Fellows et al. |
| 10,254,067 B2 | 4/2019 | Foster |
| 10,267,584 B2 | 4/2019 | Kasanjian-King |
| 10,330,413 B2 | 6/2019 | Williams et al. |
| 10,488,136 B2 | 11/2019 | Sullivan et al. |
| 10,502,511 B2 | 12/2019 | Graves |
| 10,514,223 B1 | 12/2019 | Rounds |
| 10,584,932 B2 | 3/2020 | Foster |
| 11,287,205 B2 | 3/2022 | Biegel |
| 11,293,715 B1 | 4/2022 | Newsome et al. |
| 11,346,627 B1 | 5/2022 | DeMonico |
| 11,724,003 B2 | 8/2023 | Strbac |
| 2006/0048426 A1 | 3/2006 | Crandall |
| 2006/0101695 A1 | 5/2006 | Longueira |
| 2007/0051236 A1 | 3/2007 | Groves et al. |
| 2007/0199435 A1 | 8/2007 | Hochstrate et al. |
| 2009/0151213 A1 | 6/2009 | Bell |
| 2009/0188145 A1 | 7/2009 | Fluhr et al. |
| 2011/0209607 A1 | 9/2011 | St. George |
| 2013/0118343 A1 | 5/2013 | Hirt |
| 2014/0311004 A1 | 10/2014 | Barrett |
| 2016/0010933 A1 | 1/2016 | Bonner |
| 2016/0102933 A1 | 4/2016 | Graves |
| 2016/0161202 A1 | 6/2016 | Larue |
| 2017/0176124 A1 | 6/2017 | Wilson |
| 2017/0219307 A1 | 8/2017 | Foster |
| 2017/0276447 A1 | 9/2017 | Foster |
| 2017/0284761 A1 | 10/2017 | Lewis et al. |
| 2017/0299309 A1 | 10/2017 | Fellows et al. |
| 2017/0328663 A1 | 11/2017 | Fellows et al. |
| 2018/0066911 A1 | 3/2018 | Graves |
| 2018/0087860 A1 | 3/2018 | Sullivan et al. |
| 2018/0112944 A1 | 4/2018 | Underwood et al. |
| 2018/0195823 A1 | 7/2018 | Schafer et al. |
| 2018/0202740 A1 | 7/2018 | Elftmann, Jr. |
| 2018/0231342 A1 | 8/2018 | Martinez |
| 2021/0222974 A1 | 7/2021 | Graves |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | 1678458 B1 | 2/2012 | |
| EP | 2950033 B1 | 11/2016 | |

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 32 of 139

# US 12,038,247 B2

Page 3

(56)  **References Cited**

FOREIGN PATENT DOCUMENTS

| TW | 409847 U | 10/2000 |
| WO | 2016/028337 A1 | 2/2016 |
| WO | 2018/058174 A1 | 4/2018 |



# FIG. 1

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 34 of 139



**FIG. 2**

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 35 of 139



**FIG. 3**



FIG. 4A

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 37 of 139



FIG. 4B



FIG. 5A



Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 39 of 139





FIG. 5B

Exhibit A



FIG. 6A



Exhibit A

Case 4:25-cv-00290-AKB    Document 23    Filed 10/15/25    Page 41 of 139



**FIG. 6B**



Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 42 of 139



FIG. 7

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 43 of 139



FIG. 8A

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 44 of 139



FIG. 8B

Exhibit A

Case 4:25-cv-00290-AKB    Document 23    Filed 10/15/25    Page 45 of 139



FIG. 8C

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 46 of 139



**FIG. 8D**

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 47 of 139



FIG. 9A

Exhibit A

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 48 of 139



FIG. 9B



FIG. 9C

Case 4:25-cv-00290-AKB   Document 23   Filed 10/15/25   Page 50 of 139



FIG. 9D

US 12,038,247 B2

## FIREARM TRIGGER MECHANISM

### RELATED APPLICATIONS

This application claims the priority benefit of U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, which is hereby incorporated by reference herein as if fully set forth in its entirety.

### FIELD OF THE INVENTION

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

### BACKGROUND OF THE INVENTION

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264, 9,816,772, and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in the assignee's U.S. Pat. Nos. 10,514,223 and 11,346,627 and U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, all of which are hereby incorporated by

reference as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued on Jul. 15, 2008, to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages.

Further improvement in forced reset triggers is desired.

### SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. Embodiments of the present invention are particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset

3

4

semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector prevent-

ing the disconnector hook from catching the hammer hook. The first and second pairs of transversely aligned openings in the housing can be adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket. The trigger mechanism can include a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The receiver can have a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing

5
6

through the receiver second pair of openings and through the housing second pair of openings. The firearm can further comprise a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. 1 is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. 2 is a top rear right perspective view thereof.

FIG. 3 is a top rear right exploded perspective view thereof.

FIG. 4A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. 4B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. 5A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. 5B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. 6A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. 6B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. 7 is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. 8A is a view similar to FIG. 7 but with the safety selector in the standard semi-automatic position.

FIG. 8B is a view similar to FIG. 8A but after the trigger has been pulled to drop the hammer.

FIG. 8C is a view similar to FIG. 8B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. 8D is a view similar to FIG. 8C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. 9A is a view similar to FIG. 7 but with the safety selector in the forced reset semi-automatic position.

FIG. 9B is a view similar to FIG. 9A but after the trigger has been pulled to drop the hammer.

FIG. 9C is a view similar to FIG. 9B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. 9D is a view similar to FIG. 9C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

DETAILED DESCRIPTION OF THE DRAWINGS

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indi-

Case 4:25-cv-00290-AKB  Document 23  Filed 10/15/25  Page 54 of 139

7

8

cate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner. QAs used herein, "transverse" means a side-to-side direction generally perpendicular to the longitudinal axis of the barrel.

Referring first to FIGS. 1-6B, there is illustrated a "drop-in" trigger module 10 adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module 10 includes a frame or housing 12 sized and shaped to fit within the internal fire control pocket of an AR-pattern lower receiver 14. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing 12 includes left and right sidewalls 16, 18 which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls 16, 18 may be interconnected by front and rear sidewalls 20, 22. The sidewalls 16, 18 include first and second pairs of aligned openings 24, 26 for receiving hollow transverse pins 30, 32 upon which a hammer 36 and trigger member 38 pivot. The openings 24, 26 are located coaxially with openings 42, 44 in the lower receiver 14. Standard AR-pattern hammer and trigger pins 46, 48 pass through the openings 42, 44 in the lower receiver 14 and through the hollow transverse pins 30, 32 to assemble the housing 12 into the lower receiver 14. Thus, the pins 30, 32 retain the hammer 36 and trigger member 38 in the housing 12 in modular fashion, whereas the pins 46, 48 retain the trigger module 10 in the lower receiver 14.

The hammer 36 has a hammer head 50, a sear catch 52, and a hammer hook 53. The hammer 36 is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member 38 has a trigger blade 54 that extends downwardly. The trigger blade 54 is the part of the trigger member 38 contacted by a user's finger to actuate the trigger mechanism. The trigger blade 54 may be curved (as shown) or straight, as desired. The trigger member 38 has a sear 56. When the sear 56 and the sear catch 52 are engaged, the hammer 36 and trigger member 38 are in their set positions. When the sear 56 and sear catch 52 are not engaged, the hammer 36 and trigger member 38 are in their released positions. The trigger member 38 also has a cam follower 58. The trigger member 38 is spring biased by a standard AR-pattern trigger member torsion spring (not shown) so that the trigger blade 54 is spring biased towards a forward position.

A disconnector 60 is pivoted on the hollow transverse pin 32 upon which the trigger member 38 pivots. The disconnector 60 has a disconnector hook 64 and a tail 66. The tail 66 of the disconnector 60 is spring biased upwardly away

from a tail 68 of the trigger member 38 by a standard AR-pattern disconnector compression spring 67.

A cam 72 is movably mounted to the housing 12. For example, the cam 72 can be pivoted on a cam pin 74 that is installed in aligned openings 76 in the sidewalls 16, 18 of the housing 12. The cam 72 has a cam lobe 78 that interacts with the cam follower 58, in a manner to be described below. The cam 72 has a first contact surface 82 on an upper forward portion thereof and a second contact surface 84 on an upper rearward portion thereof. The cam 72 has a notch 86 below the second contact surface 84 to provide clearance for the rear wall 22 of the housing 12. Alternatively, the cam 72 can be slidably mounted to the housing 12 with or without spring bias.

An upper receiver 90 houses a bolt carrier assembly 92. As is well-known in the art, the bolt carrier assembly 92 (or blow-back bolt) slidably reciprocates in the upper receiver 90 and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly 92 used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the cam 72, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly 92 has an engagement surface 94 in a rear portion 96 of the bolt carrier body 98. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly 92 a lower surface 102 in a forward portion 104 of the bolt carrier body 98 contacts the face of the hammer head 50 causing the hammer 36 to pivot rearward. During further rearward travel of bolt carrier assembly 92 the lower surface 102 of the bolt carrier body 98 contacts the surface 82 of the cam 72 to pivot cam 72 in a first direction from a first position to a second position. During forward travel of the bolt carrier assembly 92 the engagement surface 94 of the bolt carrier body 98 contacts the surface 84 of the cam 72 to pivot the cam 72 in a second opposite direction from the second position to the first position.

A three position safety selector 110 has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator 111 pointing forward), a wide semi-circular portion 112 of the safety selector 110 prevents the trigger blade 54 from being pulled (FIGS. 4A, 4B, and 7). When in the standard semi-automatic position (safety selector indicator 111 pointing upward), a flat portion 114 of the safety selector 110 permits the trigger blade 54 to be pulled. The disconnector 60 can pivot with the trigger member 38 and the disconnector hook 64 can catch the hammer hook 53 during rearward pivoting travel of the hammer head 50. (FIGS. 5A and 5B). When in the forced reset semi-automatic position (safety selector indicator 111 pointing rearward), a narrow semi-circular portion 116 permits the trigger blade 54 to be pulled but prevents the disconnector 60 from pivoting with the trigger member 38 thus preventing the disconnector hook 64 from catching the hammer hook 53 during rearward pivoting travel of the hammer head 50. (FIGS. 6A and 6B). In other words, in the forced reset semi-automatic position, the disconnector 60 is "disabled" in that the disconnector hook 64 is unable to catch the hammer hook 53 during cycling of the bolt carrier assembly 92.

Referring now to FIGS. 8A-8D, with the safety selector 110 set in the standard semi-automatic position, rearward

finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** may acts upon the cam follower **58** to pivot the trigger member **38** counter-clockwise. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. 9A-9D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** acts upon the cam follower **58** to the pivot trigger member **38** counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by cam **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or

nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **84** of cam **72**, disengaging the cam lobe **78** from the cam follower **58**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

**1**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

US 12,038,247 B2

<table>
<tr><td>11</td><td>12</td></tr>
</table>

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2.** The trigger mechanism of claim **1**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**3.** The trigger mechanism of claim **1** further including a spring which biases said trigger member towards said set position.

**4.** A firearm trigger mechanism comprising:

a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin,

a cam having a cam lobe and mounted in said housing to pivot on said cam pin, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward

pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**5.** The trigger mechanism of claim **4**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**6.** The trigger mechanism of claim **4**, wherein said first and second pairs of transversely aligned openings in said housing are adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket.

**7.** The trigger mechanism of claim **4** further including a spring which biases said trigger member towards said set position.

**8.** The trigger mechanism of claim **7** wherein said spring is a torsion spring.

**9.** A firearm comprising:

a receiver having a fire control mechanism pocket therein,

a reciprocating bolt carrier,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of said bolt carrier,

a trigger member having a sear and mounted in said fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and mounted in said fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector mounted in said fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said

US 12,038,247 B2

13

hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire said firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire said firearm without manually releasing said trigger member.

**10**. The firearm of claim **9** further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**11**. The firearm of claim **10** further comprising:

said receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings,

said housing first pair of openings coaxial with said receiver first pair of openings and said housing second pair of openings coaxial with said receiver second pair of openings,

a first assembly pin passing through said receiver first pair of openings and through said housing first pair of openings, and

a second assembly pin passing through said receiver second pair of openings and through said housing second pair of openings.

**12**. The firearm of claim **10** further comprising a spring which biases said trigger member towards said set position.

**13**. The firearm of claim **12** wherein said spring is a torsion spring.

**14**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

14

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**15**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,

whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from

US 12,038,247 B2

**15**

catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**16**. The trigger mechanism of claim **15**, further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**17**. The trigger mechanism of claim **15**, further comprising a spring which biases said trigger member towards said set position.

**18**. The trigger mechanism of claim **17**, wherein said spring is a torsion spring.

**19**. The trigger mechanism of claim **15**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

**20**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse disconnector pivot axis,

**16**

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member into said set position and a second position at which said cam lobe does force said trigger member into said set position, and

a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**21**. The trigger mechanism of claim **20**, wherein said cam is not a part of said safety selector.

**22**. The trigger mechanism of claim **20**, wherein said safety selector moves between safe, standard semi-automatic, and forced reset semi-automatic positions by rotation.

**23**. The trigger mechanism of claim **20**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

* * * * *

Exhibit B

US007398723B1

(12) **United States Patent**

Blakley

(10) Patent No.: **US 7,398,723 B1**

(45) Date of Patent: **Jul. 15, 2008**

(54) **TRIGGER FORWARD DISPLACEMENT SYSTEM AND METHOD**

(76) Inventor: **Brian A. Blakley**, 8971 - 67th St. N., Pinellas Park, FL (US) 33782

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 516 days.

(21) Appl. No.: **10/424,676**

(22) Filed: **Apr. 25, 2003**

(51) Int. Cl.
*F41A 19/02* (2006.01)

(52) **U.S. Cl.** .................. **89/129.01**; 89/129.02; 89/130; 89/131; 42/69.01

(58) **Field of Classification Search** ............... 42/69.01, 42/70.06; 89/128–131, 129.01, 129.02
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | | |
|---|---|---|---|---|---|
| 4,023,465 | A | * | 5/1977 | Inskip | .......................... 89/131 |
| 4,057,003 | A | * | 11/1977 | Atchisson | .................... 89/138 |
| 4,463,654 | A | * | 8/1984 | Barnes et al. | ................. 89/128 |
| 4,580,484 | A | * | 4/1986 | Moore | .......................... 89/128 |

| | | | | | |
|---|---|---|---|---|---|
| 4,697,495 | A | * | 10/1987 | Beretta | ........................ 89/143 |
| 4,787,288 | A | * | 11/1988 | Miller | ........................ 89/27.3 |
| 5,614,691 | A | * | 3/1997 | Taylor | ........................ 89/128 |
| 6,101,918 | A | * | 8/2000 | Akins | ..................... 89/129.01 |

* cited by examiner

*Primary Examiner*—Troy Chambers
(74) *Attorney, Agent, or Firm*—Edward P Dutkiewicz

(57) **ABSTRACT**

A semi-automatic firearm has forward and rearward ends. A receiver has a safety selector aperture, a barrel, a reciprocating loading mechanism and a magazine. A trigger finger and inner portions. The inner portion has a seat with a groove. A disconnector has a hammer hook coupled to the trigger. A trigger mounting pin couples the trigger to the firearm. A trigger disconnector spring couples the trigger and the disconnector. A hammer having an upper striking portion with a disconnector hook receptacle. A hammer mounting pin couples the hammer to the firearm. A hammer spring is coupled to the hammer and hammer mounting pin. A cam body subassembly comprises a cam body housing, a cam and a cam mounting pin. The cam body subassembly is coupled to the firearm. A safety selector is coupled to the firearm. A trigger extender is mated with the upward trigger groove.

**1 Claim, 5 Drawing Sheets**







FIG 1

FIG 2



FIG 2A

FIG 2B



*FIG 2C*



*FIG 3A*



FIG 3

FIG 4

Exhibit B



*FIG  5*

US 7,398,723 B1

**1**

TRIGGER FORWARD DISPLACEMENT
SYSTEM AND METHOD

BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a trigger forward displacement system and method and more particularly pertains to increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

2. Description of the Prior Art

The use of accelerating assemblies for semi-automatic firearms is known in the prior art. More specifically, accelerating assemblies for semi-automatic firearms previously devised and utilized for the purpose of accelerating the cyclic firing rate of semi-automatic firearms are known to consist basically of familiar, expected, and obvious structural configurations, notwithstanding the myriad of designs encompassed by the crowded prior art which has been developed for the fulfillment of countless objectives and requirements.

By way of example, U.S. Pat. No. 6,101,918 issued Aug. 15, 2000 to Akins discloses a method and apparatus for accelerating the cyclic firing rate or a semi-automatic firearm. U.S. Pat. No. 4,023,465 issued May 17, 1977 to Inskip discloses a firearm. U.S. Pat. No. 4,787,288 issued to Miller discloses a rapid fire trigger activator. Lastly, U.S. Pat. No. 4,697,495 issued Oct. 6, 1987 to Beretta discloses a tripping mechanism for the conversion closed-bolt automatic rifles to open-bolt ones.

While these devices fulfill their respective, particular objectives and requirements, the aforementioned patents do not describe a trigger forward displacement system and method that allows increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

In this respect, the trigger forward displacement system and method according to the present invention substantially departs from the conventional concepts and designs of the prior art, and in doing so provides an apparatus primarily developed for the purpose of increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

Therefore, it can be appreciated that there exists a continuing need for a new and improved trigger forward displacement system and method which can be used for increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm. In this regard, the present invention substantially fulfills this need.

SUMMARY OF THE INVENTION

In view of the disadvantages inherent in the known types of accelerating assemblies for semi-automatic firearms now present in the prior art, the present invention provides an improved trigger forward displacement system and method. As such, the general purpose of the present invention, which will be described subsequently in greater detail, is to provide a new and improved trigger forward displacement system and method which has all the advantages of the prior art and none of the disadvantages.

To attain this, the present invention essentially comprises a semi-automatic firearm. The semi-automatic firearm has a forward end and a rearward end. The semi-automatic firearm is comprised of a receiver. The receiver has a safety selector aperture. The semi-automatic firearm has a barrel and a bolt. The semi-automatic firearm further has a reciprocating loading mechanism and a magazine.

**2**

A trigger is provided. The trigger is fabricated of rigid material. The trigger has an outer finger portion and an inner portion. The inner portion has a forward end and a rearward end. The finger portion has a generally forwardly displaced and downwardly projecting arcuate configuration. The rearward inner portion has a seat. The seat comprises a generally rectangularly configured rearward portion. The seat has two upwardly projecting side walls and a rear wall. The walls form an upwardly displaced groove. The groove has a first width. The inner portion of the trigger also has upwardly facing spring recess. The recesses are forward of the groove. The forwardmost end of the inner portion has a beveled sear portion. A mounting pin hole is provided through the inner portion of the trigger. In this manner the trigger is allowed to rotate about the pin hole.

A disconnector is provided next. The disconnector is fabricated of rigid material. The disconnector has a lower attachment portion and an upper portion. A mounting pin hole is provided through the lower attachment portion. The lower attachment portion has a downwardly disposed spring recess. The upper portion has a generally forwardly oriented hooked configuration with a hammer hook.

Provided next is a trigger mounting pin. The trigger mounting pin couples the disconnector and the trigger to the firearm receiver. In this manner the pivotal motion of the trigger and the disconnector is allowed about the trigger pin.

A trigger disconnector spring is provided. The trigger disconnector spring couples the trigger and the disconnector. The spring is nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

Next, a hammer is provided. The hammer has a pair of parallel side walls. A thickness is provided between the sidewalls. The hammer has a lower attachment portion and an upper striking portion. A hammer mounting pin aperture is provided through the attachment portion from side to side. The lower portion has a trigger sear catch. The trigger sear engages the trigger and the hammer. The upper portion has a rearwardly displaced disconnector hook receptacle a striking surface. The striking surface is forwardly disposed.

A hammer mounting pin is provided. The hammer mounting pin is sized to couple the hammer and the receiver. In this manner the hammer is allowed to pivot about the hammer mounting pin.

Provided next is a hammer spring. The hammer spring is coupled to the hammer mounting pin. The hammer spring pushes the hammer in a forwardly direction.

Also provided is a cam body subassembly. The cam body subassembly comprises a cam body housing, a cam, and a cam mounting pin. The cam body has a generally rectangular configuration. The cam body has two side surfaces, a rear surface, and a forward surface. The cam body further has a top surface and a bottom surface. The body has a forward portion and a rearward portion. A side to side recess is provided through the rearward portion. In this manner the receiver of the firearm is accommodated. The forward portion has a pair of forwardly projecting cam holders. Through each cam holder is a cam holder pin aperture. The cam has a lower portion. The lower portion has a lower surface. The cam has an upper portion, a front portion, and a rear portion. The lower portion has a generally rectilinear configuration. The upper portion has an upwardly projecting front and rear beveled configuration. In this manner a point is formed. A cam pin aperture is provided in the cam. The cam pin aperture aligns with and mates with the cam holder pin apertures. The cam mounting pin is sized to be received by and mated with the

US 7,398,723 B1

**3**

cam holder pin apertures. The cam mounting pin allows the pivotal rotation of the cam about the mounting pin.

Further provided is a safety selector. The safety selector has an outer portion and an inner portion. The outer portion comprises a downwardly displaced lever. The inner portion has a generally solid tubular configuration. The inner portion has a plurality of flat recessed surfaces. The selector is mated with and received by the receiver safety aperture. In this manner the selector is rotatable when in place.

Last provided is a trigger extender. The trigger extender is in a generally rectilinear configuration. The trigger extender has a stepped upper surface and a lower surface. The trigger extender has two parallel side surfaces and parallel front and rear surfaces. The lower surface has a first external side. The first external side has a side to side first width to be received by and mated with the upward trigger groove. The stepped upper surface is flattened and mated with the lower surface of the lower portion of the cam. Mating with the cam is allowed in a rearward position and a disconnected with the cam in the forward position.

There has thus been outlined, rather broadly, the more important features of the invention in order that the detailed description thereof that follows may be better understood and in order that the present contribution to the art may be better appreciated. There are, of course, additional features of the invention that will be described hereinafter and which will form the subject matter of the claims attached.

In this respect, before explaining at least one embodiment of the invention in detail, it is to be understood that the invention is not limited in its application to the details of construction and to the arrangements of the components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments and of being practiced and carried out in various ways. Also, it is to be understood that the phraseology and terminology employed herein are for the purpose of descriptions and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily be utilized as a basis for the designing of other structures, methods and systems for carrying out the several purposes of the present invention. It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.

It is therefore an object of the present invention to provide a new and improved trigger forward displacement system and method which has all of the advantages of the prior art accelerating assemblies for semi-automatic firearms and none of the disadvantages.

It is another object of the present invention to provide a new and improved trigger forward displacement system and method which may be easily and efficiently manufactured and marketed.

It is further an object of the present invention to provide a new and improved trigger forward displacement system and method which is of durable and reliable construction.

An even further object of the present invention is to provide a new and improved trigger forward displacement system and method which is susceptible of a low cost of manufacture with regard to both materials and labor, and which accordingly is then susceptible of low prices of sale to the consuming public, thereby making such trigger forward displacement system and method economically available to the buying public.

Even still another object of the present invention is to provide a trigger forward displacement system and method

**4**

for increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

Lastly, it is an object of the present invention to provide a new and improved trigger forward displacement system and method. A semi-automatic firearm has forward and rearward ends. A receiver has a safety selector aperture, a barrel, a reciprocating loading mechanism and a magazine. A trigger having finger and inner portions. The inner portion has a seat with a groove. A disconnector has a hammer hook coupled to the trigger. A trigger mounting pin couples the trigger to the firearm. A trigger disconnector spring couples the trigger and the disconnector. A hammer having an upper striking portion with a disconnector hook receptacle. A hammer mounting pin couples the hammer to the firearm. A hammer spring is coupled to the hammer and hammer mounting pin. A cam body subassembly comprises a cam body housing, a cam and a cam mounting pin. The cam body subassembly is coupled to the firearm. A safety selector is coupled to the firearm. A trigger extender is mated with the upward trigger groove.

These together with other objects of the invention, along with the various features of novelty which characterize the invention, are pointed out with particularity in the claims annexed to and forming a part of this disclosure. For a better understanding of the invention, its operating advantages and the specific objects attained by its uses, reference should be had to the accompanying drawings and descriptive matter in which there is illustrated preferred embodiments of the invention.

### BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be better understood and objects other than those set forth above will become apparent when consideration is given to the following detailed description thereof. Such description makes reference to the annexed drawings wherein:

FIG. **1** is a cross sectional elevation of the invention depicting the configuration of the firearm mechanism at the time of discharge of the firearm.

FIG. **2** is a cross sectional elevation of the invention depicting the configuration of the firearm mechanism at the time of the firearm bolt engaging the cam and pushing the trigger forward.

FIG. **3** is a cross sectional elevation of the invention depicting the configuration of the firearm at the time the firearm bolt is in a nearly forward, nearly closed position.

FIG. **4** is front sectional elevation of the invention along line **4-4** of FIG. **3**.

FIG. **5** is an exploded view of the receiver of a firearm, demonstrating the relationships of the various components of the invention with the receiver.

The same reference numerals refer to the same parts throughout the various Figures.

### DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings, and in particular to FIG. **1** thereof, the preferred embodiment of the new and improved trigger forward displacement system and method embodying the principles and concepts of the present invention and generally designated by the reference numeral **10** will be described.

The present invention, the trigger forward displacement system and method **10** is comprised of a plurality of components. Such components in their broadest context include a semi-automatic firearm, a trigger, a disconnector, a trigger

US 7,398,723 B1

5

mounting pin, a trigger disconnector spring, a hammer, a hammer mounting pin, a hammer spring, a cam body assembly, a safety selector, and a trigger extender. Such components are individually configured and correlated with respect to each other so as to attain the desired objective.

First provided is a semi-automatic firearm. The semi-automatic firearm has a forward end 12 and a rearward end 14. The semi-automatic firearm is comprised of a receiver 16. The receiver has a safety selector aperture. The semi-automatic firearm has a barrel and a bolt. The semi-automatic firearm further has a reciprocating loading mechanism 20 and a magazine.

A trigger 22 is provided. The trigger is fabricated of rigid material. The trigger has an outer finger portion 24 and an inner portion 26. The inner portion has a forward end and a rearward end. The finger portion has a generally forwardly displaced and downwardly projecting arcuate configuration. The rearward inner portion has a seat 28. The seat comprises a generally rectangularly configured rearward portion. The seat has two upwardly projecting side walls and a rear wall. The walls form an upwardly displaced groove 30. The groove has a first width. The inner portion of the trigger also has upwardly facing spring recess 32. The recesses are forward of the groove. The forwardmost end of the inner portion has a beveled sear portion 34. A mounting pin hole 36 is provided through the inner portion of the trigger. In this manner the trigger is allowed to rotate about the pin hole.

A disconnector 38 is provided next. The disconnector is fabricated of rigid material. The disconnector has a lower attachment portion and an upper portion. A mounting pin hole 40 is provided through the lower attachment portion. The lower attachment portion has a downwardly disposed spring recess 42. The upper portion has a generally forwardly oriented hooked configuration with a hammer hook 44.

Provided next is a trigger mounting pin 46. The trigger mounting pin couples the disconnector and the trigger to the firearm receiver. In this manner the pivotal motion of the trigger and the disconnector is allowed about the trigger pin.

A trigger disconnector spring 48 is provided. The trigger disconnector spring couples the trigger and the disconnector. The spring is nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

Next, a hammer is provided. The hammer has a pair of parallel side walls. A thickness is provided between the side-walls. The hammer has a lower attachment portion and an upper striking portion. A hammer mounting pin aperture 50 is provided through the attachment portion from side to side. The lower portion has a trigger sear 52 catch. The trigger sear engages the trigger and the hammer. The upper portion has a rearwardly displaced disconnector hook receptacle 54 a striking surface 56. The striking surface is forwardly disposed.

A hammer mounting pin 58 is provided. The hammer mounting pin is sized to couple the hammer and the receiver. In this manner the hammer is allowed to pivot about the 55 hammer mounting pin.

Provided next is a hammer spring 60. The hammer spring is coupled to the hammer mounting pin. The hammer spring pushes the hammer in a forwardly direction.

Also provided is a cam body subassembly 62. The cam body subassembly comprises a cam body housing 64, a cam 66, and a cam mounting pin 68. The cam body has a generally rectangular configuration. The cam body has two side surfaces, a rear surface, and a forward surface. The cam body further has top surface and a bottom surface. The body has a forward portion and a rearward portion. A side to side recess 70 is provided through the rearward portion. In this manner

6

the receiver of the firearm is accommodated. The forward portion has a pair of forwardly projecting cam holders 72. Through each cam holder is a cam holding pin aperture 74. The cam has a lower portion 76. The lower portion has a lower surface. The cam has an upper portion 78, a front portion, and a rear portion. The lower portion has a generally rectilinear configuration. The upper portion has an upwardly projecting front and rear beveled configuration. In this manner a point is formed. A cam pin aperture 80 is provided in the cam. The cam pin aperture aligns with and mates with the cam holder pin apertures. The cam mounting pin is sized to be received by and mated with the cam holder pin apertures. The cam mounting pin allows the pivotal rotation of the cam about the mounting pin.

Further provided is a safety selector 82. The safety selector has an outer portion 84 and an inner portion 86. The outer portion comprises a downwardly displaced lever. The inner portion has a generally solid tubular configuration. The inner portion has a plurality of flat recessed surfaces 88. The selector is mated with and received by the receiver safety aperture. In this manner the selector is rotatable when in place.

Last provided is a trigger extender 90. The trigger extender is in a generally rectilinear configuration. The trigger extender has a stepped upper surface 92 and a lower surface. The trigger extender has two parallel side surfaces and parallel front and rear surfaces. The lower surface has a first external side. The first external side has a side to side first width to be received by and mated with the upward trigger groove. The stepped upper surface is flattened and mated with the lower surface of the lower portion of the cam. Mating with the cam is allowed in a rearward position and a disconnected with the cam in the forward position.

The present invention also comprises a method for automatically actively and positively moving a trigger from a rearward firing position into a forward ready position during the loading cycle of a semi-automatic firearm.

The first step of the method is providing a semi-automatic firearm having a forward end and a rearward end comprising a receiver having a safety selector aperture and a barrel and a bolt and a reciprocating loading mechanism and a magazine.

The next step is providing a trigger fabricated of rigid material having an outer finger portion and an inner portion with the inner portion having a forward end and a rearward end, the finger portion having a generally forwardly displaced and downwardly projecting arcuate configuration, with the rearward inner portion having a seat, the seat comprising a generally rectangularly configured rearward portion with two upwardly projecting side walls and a rear wall, the walls forming an upwardly displaced groove having a first width, the inner portion of the trigger also having upwardly facing spring recess forward of the groove, the forwardmost end of the inner portion having a beveled sear portion, with the inner portion of the trigger having a mounting pin hole there through for allowing the trigger to rotate about the pin hole.

The next step is providing a disconnector fabricated of rigid material having a lower attachment portion and an upper portion, the lower attachment portion having a mounting pin hole there through, the lower attachment portion having a downwardly disposed spring recess, with the upper portion having a generally forwardly oriented hooked configuration with a hammer hook.

The next step is providing a trigger mounting pin for coupling the disconnector and the trigger to the firearm receiver to allow the pivotal motion of the trigger and the disconnector about the trigger pin.

The next step is providing a trigger disconnector spring for coupling the trigger and the disconnector, the spring being

US 7,398,723 B1

7

nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

The next step is providing a hammer having a pair of parallel side walls and a thickness there between, the hammer having a lower attachment portion and an upper striking portion with the attachment portion having a hammer mounting pin aperture there through from side to side, with the lower portion having a trigger sear catch to engage the trigger and the hammer, the upper portion having a rearwardly displaced disconnector hook receptacle and a forwardly disposed striking surface.

The next step is providing a hammer mounting pin sized to couple the hammer and the receiver to allow the hammer to be pivot able about the hammer mounting pin;

The next is providing a hammer spring coupled to the hammer mounting pin, the hammer spring pushing the hammer in a forwardly direction.

The next step is providing a cam body subassembly comprising a cam body housing and a cam and a cam mounting pin, the cam body having a generally rectangular configuration with two side surfaces and a rear surface and a forward surface and a top surface and a bottom surface, the body having a forward portion and a rearward portion, the rearward portion having a side to side recess there through sized to accommodate the receiver of the firearm, the forward portion having a pair of forwardly projecting cam holders, with each cam holder having a cam holder pin aperture there through, the cam having a lower portion with a lower surface and an upper portion and a front portion and a rear portion, the lower portion having a generally rectilinear configuration and the upper portion having an upwardly projecting front and rear beveled configuration forming a point, the cam having a cam pin aperture there through to align with and mate with the cam holder pin apertures, the cam mounting pin sized to be received by and mated with the cam holder pin apertures, with the cam mounting pin allowing the pivotal rotation of the cam about the mounting pin.

The next step is providing a safety selector having an outer portion and an inner portion, the outer portion comprising a downwardly displaced lever with the inner portion having a generally solid tubular configuration with a plurality of flat recessed surfaces, the selector being mated with and received by the receiver safety aperture allowing the selector to be rotatable when in place.

The penultimate step is providing a trigger extender having a generally rectilinear configuration with an upper surface and a lower surface and two parallel side surfaces and parallel front and rear surfaces with the lower surface having a first external side to side first width to be received by and mated with the upward trigger groove, the upper surface being flattened and mated with the lower surface of the lower portion of the cam.

The final step is automatically actively and positively moving the trigger of a semi-automatic firearm from the rearward fire position to the reset, unpulled and ready to fire position by the reciprocating function of the firearm mechanism, such that, once reset, the operator's finger pressure is prevented from being able to move the trigger in the rearward direction toward the fire position until the firearm reciprocating mechanism has reached an approximately closed, ready to fire position, with such means also preventing the binding or displacement of the reciprocating loading mechanism by a pressure placed on the trigger.

What is claimed as the invention is an accelerating assembly to effectively increase the cyclic rate at which the operator may actuate the trigger and discharge a semi-automatic fire-

8

arm. The firearm is a typical semi-automatic firearm containing a reciprocating member which is used to load a round of live ammunition into the chamber, to position the components of the action to be ready to effect the discharge of the loaded round in response to a pull of the trigger by the operator, and to unload the spent cartridge from the chamber of the firearm after firing. The accelerating mechanism incorporates a plurality of parts designed to allow the reciprocating member of the firearm, said reciprocating member including a bolt, bolt carrier, slide or part of another name depending upon the firearm involved.

On the rearward travel of the reciprocating member the mechanism resets the trigger to the forward, ready-to-fire position. The trigger reset may be against the rearward pressure on the trigger applied by the operator's finger. The trigger is positively held in the forward, ready-to-fire position until such time as the reciprocating member has reversed direction and has reached the nearly-fully-forward position where it is safe to allow discharge of the firearm.

When the nearly-fully-forward, or nearly closed, position is reached, the accelerating mechanism disengages and allows the operator to again pull the trigger rearward. This cycle will be repeated the firearm to be discharged at a accelerated rate. The semi-automatic status of the firearm is retained as the firearm only discharges one round of ammunition for each pull of the trigger.

The present invention relates generally to firearms. Specifically, the present invention relates to methods and structural arrangements by which to accelerate the cyclic firing rate of a semi-automatic firearm. The method utilized by this invention is the resetting of the trigger to the forward ready-to-fire position by use of the reciprocating mechanism of the firearm. The mechanism moves the trigger from the fire, rearward, position into the ready-to-fire, forward, position. The trigger is held in the ready-to-fire position until the firearm has completed the discharge, extraction, reloading sequence. Once the sequence is complete and the bolt is in the nearly-fully-forward, or nearly closed, position, and then mechanism disengages the trigger thereby allowing the operator to pull the trigger and repeat the sequence. As the trigger is actively moving forward and rearward for each shot fired, and as the shooter must in fact pull the trigger each time, the semi-automatic status of the firearm is preserved.

Fully automatic firearms, commonly referred to as "machine guns" are designed such that they will continue to fire automatically so long as the trigger of the firearm is held in the rearward position. Legally any firearm that discharges more than one shot by a single function of the trigger is a machine gun. While machine guns are legal for civilian ownership in the United States, further manufacture of machine guns for civilian sale was outlawed in May of 1986 thereby fixing the quantity of machine guns available to the civilian market. Due to this "fixed supply" in the face of increasing demand, machine gun prices have continued to rise over time, currently reaching levels that are out of reach for many consumers. Additionally machine guns are regulated by the National Firearms Act which imposes transfer taxes, registration requirements, and other administrative burdens on owners of machine guns. Given this combination of economics and regulatory requirements, many inventors have devised ways to increase the cyclic rate of a semi-automatic firearm without causing the firearm to become a machine gun by violating the "one round per function of the trigger" rule.

One prior known attempt to enhance the cyclic firing rate of a semi-automatic firearm was commonly known as the "Hell Fire System". The Hell Fire System, or HFS, constitutes a spring biased paddle that engages the rear of the trigger and

US 7,398,723 B1

**9**

continually urges it in a forward direction. To operate the HFS, on balances the firearm by supporting it with one hand grasping the fore-end of the stock and with the hand having the trigger-finger positioned so the trigger finger is within the trigger guard of the firearm but that hand is otherwise not touching the firearm. The hand with the trigger finger is held in a fixed position. The operator then uses the hand that grasps the fore-end of the firearm to pull the firearm away from his body causing the trigger to contact that approximately statically held trigger finger and with continued pulling by the first hand, the trigger finger is made to pull the trigger. When the firearm discharges and recoils, the entire firearm moves rearward which also moves the trigger rearwardly away from the approximately statically held trigger finger. Throughout this sequence the operator is continually pulling the firearm away from him with the hand on the fore-end but his attempt to do so is briefly interrupted by the recoil impulse.

As the recoil impulse subsides the operator's continued pulling will once again move the firearm away from the body causing the trigger to impact the trigger finger and the process repeats. Accuracy and reliability suffered greatly as the firearm could not be shouldered and the technique required practice to develop.

Another known method is the Akins patent (U.S. Pat. No. 6,101,918) referenced by this patent which takes the HFS principle and renders it in a mechanically controlled form that is accurate and reliable. By allowing the entire firearm frame, action and barrel to move within the stock of the firearm, Akins permits the firearm to be shouldered, the trigger finger to be absolutely statically held, and still employ the general HFS principle of allowing the recoil to move the trigger away from the trigger finger. While accurate and reliable, the Akins invention is best suited to firearms in which the receiver of the firearm is coupled to a unitary grip and buttstock so that the shooter's trigger-finger hand can be held stationary relative to the buttstock while the receiver moves within the grip-stock unit.

Many military style arms have a separate pistol grip and buttstock in their military configuration. In order to use the Akins invention these firearms would have to be fitted with a unitary grip-stock combination such as a thumb-hole stock. Therefore, many firearms such as the AR15, L1A1, AK47, etc. would not be able to employ the Akins invention in their original separate-pistol-grip configuration.

Additionally it appears that the Akins invention requires considerable modification to the host firearm in order to permit the receiver to move within the stock and provide a means to urge the receiver forward again after the recoil impulse has subsided.

Lastly, the Inskip patent, (U.S. Pat. No. 4,023,465) also referenced by this patent, appears intended to regulate the rate of fire of a machine gun by allowing the operator to control the rate of fire of the firearm by the pulling pressure on the trigger. The exemplary embodiment of Inskip's invention uses the cycling bolt carrier of an AK47 to move the trigger of the firearm to the forward ready-to-fire position, and then locks the trigger in that position until the bolt carrier returns to battery at which time the trigger is unlocked and the operator again allowed to pull it. According to Inskip's patent disclosure, if the operator pulls the trigger lightly the cycle will be slowed and if the trigger is pulled firmly the cyclic rate will increase. The difference between the present invention and the Inskip invention is that the Inskip mechanism used to allow the bolt carrier to force the trigger forward allows the operator's trigger finger pressure to be transmitted vertically to the bolt carrier during the entire latter portion of the bolt carrier's cycle. Inskip allows the operator's trigger finger

**10**

pressure to cam the bolt carrier upward causing friction between the bolt carrier and the adjacent surfaces of the receiver of the firearm. The period when the carrier approaches, then reaches its fully rearward point and reverses directions is a vulnerable point with regard to stoppages as the bolt carrier is in a lower kinetic energy state and more easily halted. Since the transmission of the trigger-finger force persists during this period the resulting friction and displacement is sufficient to cause the bolt carrier to bind and cease travel in some firearms causing a highly undesirable stoppage. The present invention eliminates this problem as follows.

It is, therefore, a primary object of the invention to provide an improved method and apparatus by which the cyclic rate of a semi-automatic firearm can be accelerated by using the reciprocating member of a semi-automatic firearm to reset the trigger to the ready-to-fire position. The mechanism described in this application allows the operator's trigger finger pressure to be overcome during a relatively high energy portion of the reciprocating member's travel. After resetting the trigger, the trigger finger pressure is borne by the accelerating mechanism and is unable to continue to transmit force to the reciprocating member. The trigger is held in the ready-to-fire position until the loading cycle is completed and the gun is safe to fire.

It is another object of the present invention to provide an improved method and apparatus, as above, that will increase the cyclic firing rate without requiring the receiver of the firearm to be modified, however, a version requiring modification of the receiver is also described.

It is another object of the present invention to provide an improved method and apparatus, as above, that will increase the cyclic firing rate without causing the firearm to fall into the legal definition of a machine gun.

After the trigger has been pulled and the hammer has fallen, impacting the firing pin and igniting a round of ammunition, the bolt is driven rearward by the firing action and in so moving will first pivot the hammer to the cocked rearward position whereupon it will engage the disconnector. As the bolt continues its rearward progress, it will secondly contact the cam pivoting it rearward until such time as the bottom surface of the forward portion of the bolt is allowed to pass over the cam freely. In rotating to the rear (more than 45 degrees) the bottom surface of the cam has pressed downward on the trigger-extension forcing the rear of the trigger down thereby moving forward the surface of the trigger that the operator's finger engages. In resetting the trigger the disconnector ceases to engage the hammer. The hammer then continues to be held to the rear by the forward engagement surface of the trigger engaging the notch in the sear notch at the bottom of the hammer. The nature of the cam and its action is such that the trigger is held firmly down/forward potentially against the finger pressure of the operator, but the force of the operator's finger is not transmitted to the bolt as an upward displacing force. Such upward displacing force would bind the bolt and abnormally terminate the firing cycle. Ultimately the bolt reaches the mechanical limit of its rearward motion (limited by the buffer spring which is not illustrated) and the bolt begins moving forward by force of said spring. As the bolt nears the end of its forward movement the face of the trailing bottom surface of the bolt (which is lower with regard to the cam than the bottom surface of the forward portion of the bolt) contacts a now vertical surface of the cam rotating the cam forward 8 or more degrees (the impact may rotate the cam further than is mechanically imperative). After the forward rotation of the cam, if finger pressure is applied to the surface of the trigger that is engaged by the operator's finger, the resulting upward force of the trigger-extension against the

US 7,398,723 B1

**11**

flat surface of the cam currently at an angle to the trigger-extension will force the cam to finish rotating forward to it's original position. The applied finger pressure will then be permitted to fully pivot the trigger to the point that it releases the hammer and begin the firing sequence again.

The disclosed invention may also be crafted by eliminating the cam body and instead fashioning the cam and firearm receiver in such a way as to allow the cam to be pinned in place directly to the receiver.

It is intended that the effect of the disclosed invention be able to be optionally selected or deselected by operating the selector-cam and by configuring the trigger extension to be able to move forward and rearward within/upon the rear of the trigger by means of a spring bias that competes with engagement surfaces machined into the selector-cam. Moving the trigger-extension forward or rearward would allow or prevent the cam from contacting the top/bearing surface of the trigger-extension by having the top/bearing surface of the trigger-extension crafted so that it has a lower and higher part, and such that when the lower part is beneath the cam the cam does not make contact with the top/bearing surface of the trigger-extension as the cam moves through its range of motion, thereby allowing or preventing the cam from resetting the trigger.

The invention can be effected without the provision of a selector whereupon the effect of the invention will be continually present unless the apparatus is removed from the firearm.

As to the manner of usage and operation of the present invention, the same should be apparent from the above

**12**

description. Accordingly, no further discussion relating to the manner of usage and operation will be provided.

With respect to the above description then, it is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to one skilled in the art, and all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention.

Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.

What is claimed as being new and desired to be protected by Letters Patent of the United States is as follows:

1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of:

depressing a firearm trigger with a finger to discharge the firearm;

activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

* * * * *

Jared W. Allen, ISB No. 5793
BEARD ST. CLAIR GAFFNEY PA
955 Pier View Drive
Idaho Falls, ID 83402
Tel: (208) 523-5171
Fax: (208) 529-9732
Email: allen@beardstclair.com

Glenn D. Bellamy, Ohio Bar No. 0070321
Wood Herron & Evans LLP
600 Vine Street, Suite 2800
Cincinnati, OH 45202
Tel: (513) 707-0243
Fax: (513) 241-6234
E-mail: gbellamy@whe-law.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC, a Delaware limited liability company, and RARE BREED TRIGGERS, INC., a Texas corporation, | |
| Plaintiffs, | Case No.: 4:25-cv-0298-AKB |
| vs. | |
| DNT LLC, d/b/a DEEZ NUTZ TACTICAL, and ZACH MORROW, an individual, | THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT |
| Defendants. | |

**Deleted:** SECOND

This is an action for patent infringement in which ABC IP LLC ("ABC") and Rare Breed

Triggers, Inc. ("Rare Breed") (collectively, "Plaintiffs") accuse DNT LLC, d/b/a Deez Nutz

Tactical ("Deez Nutz") and Zach Morrow ("Morrow") (collectively, "Defendants"), of infringing

U.S. Patent No. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723

Patent") as follows:

**Deleted:** Second

Third Amended Complaint for Patent Infringement  1

**PARTIES**

1.      ABC is a limited liability company organized under the laws of the State of Delaware with an address at 8 The Green, Suite A, Dover, Delaware 19901.

2.      Rare Breed is a corporation organized under the laws of Texas with an address of 2710 Central Freeway, Suite 150, Wichita Falls, TX 76306.

3.      Deez Nutz is a limited liability company existing under the laws of the state of Idaho and has a place of business at 354 Chateau Drive, Idaho Falls, ID 83404.

4.      Morrow is an individual residing at 354 Chateau Drive, Idaho Falls, ID 83404, and is the sole member of and operates Deez Nutz.

5.      Upon information and belief, Morrow operates Deez Nutz from his residence.

**JURISDICTION AND VENUE**

6.      This is an action for patent infringement arising under 35 U.S.C. §§ 271(a)-(c), 281, and 284-85.

7.      This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1338, which directs that United States District Courts shall have original jurisdiction of any civil action arising under any Act of Congress relating to patents and pursuant to 28 U.S.C. § 1331, which pertains to civil actions arising under the laws of the United States.

8.      Personal jurisdiction and venue over Defendants are proper in this District because the Defendants reside in and/or have a place of business this district.

9.      Venue is proper in this district pursuant to 28 U.S.C. § 1400(b). Defendants reside in this district and/or have a regular and established place of business in this District.

Third Amended Complaint for Patent Infringement  2

Deleted: Upon information and belief,

Deleted: Upon information and belief,

Deleted: operator and director

Deleted: ,

Deleted: which he operates from his residence.

Deleted: Second

**BACKGROUND**

10.    This lawsuit asserts contributory and induced infringement of U.S. Patent Nos. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the '723 Patent"). True and correct copies of the '247 Patent and the '723 Patent are attached hereto as Exhibits A and B, respectfully.

11.    The '247 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 16, 2024. The application from which the '247 Patent issued claimed a priority date of September 8, 2022.

12.    The '723 Patent was lawfully and properly issued by the United States Patent and Trademark Office on July 15, 2008. The application from which the '723 Patent issued has a priority date of April 25, 2003.

13.    The '723 Patent lapsed for nonpayment of its final maintenance fee. The inventor and owner of the '723 Patent at the time, Brian A. Blakley, did not receive a reminder of the maintenance fee being due from his attorney and the failure to pay the maintenance fee in time was inadvertent. A Petition to Accept Unintentionally Delayed Payment of Maintenance Fee was filed on April 20, 2022, and the '723 Patent was reinstated on May 16, 2022.

14.    ABC is the current assignee and owner of all right, title and interest in and to the '247 and '723 Patents. These assignments have been recorded at the United States Patent and Trademark Office ("USPTO").

15.    The '723 Patent expired on September 22, 2024.

16.    Rare Breed is the exclusive licensee of the '247 and '723 Patents.

17.    Upon information and belief, Defendants have committed acts of contributory and induced patent infringement, which will be described in more detail below. These acts are in violation of 35 U.S.C. § 271 and should be considered willful.

18.    On March 31, 2025, counsel for ABC sent a cease and desist demand letter to Deez Nutz, informing it of the '247 Patent and expressly accusing its "Super Safety" (3 Position) of patent infringement.

19.    Additionally, on information and belief, Defendants have committed contributory and induced infringement of U.S. Patent No. 7,398,723 ("the '723 Patent") prior to its expiration.

**The Invention**

20.    The '723 Patent discloses a semiautomatic trigger mechanism that forces the trigger to reset via a cam and claims a method of accelerating the firing cycle using such a trigger mechanism.

21.    The '247 Patent provides a novel device for accelerating the firing sequence of any semiautomatic firearm, in contrast to a standard semiautomatic trigger or other prior art devices that allow an accelerated rate of semiautomatic firing. The device can be selected to operate in either a standard semiautomatic mode or a forced reset semiautomatic mode and uses a cam, rotated by cycling of the action, to force the trigger member to reset and prevent the trigger member from being pulled again until the action has returned to the in-battery position. While the '247 Patent may be adapted to many types of firearms, the '247 Patent shows one embodiment designed as a drop-in replacement particularly to fit AR15-pattern firearms. The scope of the claimed invention, however, is defined by the claims of the '247 Patent.

22.    A typical AR15-pattern firearm, for example, is considered a semiautomatic firearm. The operation of a *standard disconnector* AR-pattern trigger mechanism is commenced

Third Amended Complaint for Patent Infringement   4

Deleted: -

Deleted: -

Deleted: Second

by the trigger member being pulled by the user. The trigger member releases the hammer from

the trigger sear and allows the hammer to strike the firing pin. A portion of the propellant gas is

used to begin the process of sending the bolt carrier to the rear of the firearm. The rearward

movement of the bolt carrier cocks the hammer on the disconnector and then the bolt is allowed

to return forward into battery with a new round inserted into the chamber. While this is

happening, in the standard AR-pattern semiautomatic trigger, the user can either continue to hold

the trigger member in a pulled (i.e., fired) state or allow the trigger to return to its reset state, in

which the sear, rather than the disconnector, engages and holds the hammer in a cocked position.

When the user reduces pressure on the trigger member to allow the trigger spring to reset the

trigger member, the disconnector releases the hammer to engage the trigger sear.

   23. In the standard AR-pattern trigger assembly, the purpose of the disconnector is to

hold the hammer in a cocked position until the trigger member is reset by a trigger spring when

the user lets the trigger reset. The disconnector allows the firearm to be fired only a single time

when the trigger is pulled and held, because the user is not typically able to manually reset the

trigger rapidly enough so that the sear engages before the bolt carrier or bolt returns to its in-

battery position. The disconnector prevents the firearm from either firing multiple rounds on a

single pull of the trigger, or from allowing the hammer to simply "follow" the bolt carrier as it

returns to battery without firing a second round, leaving the hammer uncocked.

   24. In contrast, in a forced reset trigger mechanism, cycling of the bolt carrier or bolt

causes the trigger member to be forced to the reset position and locks the trigger member in this

position until the bolt or bolt carrier is back in battery, when it is safe for the user to pull the

trigger again, without the need for a disconnector.

**Deleted:** Second

Third Amended Complaint for Patent Infringement   5

25.     The '723 Patent teaches a trigger mechanism in which the cycling action of a semiautomatic firearm causes a cam to forcibly reset the trigger member and holds it there until the action has reached the end of its cycle and is ready to fire again.

26.     The '723 Patent claims a method of accelerating the firing cycle of a semiautomatic firearm. According to the method, a firearm trigger is depressed with a finger to discharge the firearm. This activates a reciprocating mechanism within the firearm (such as a bolt or bolt carrier) which causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

> **Formatted:** Font color: Text 1

27.     The '247 Patent relates to a semiautomatic trigger mechanism that represents an improvement on the above-described technologies because it has two modes of operation: one that operates as a standard disconnector trigger mechanism described above and another that allows the user to fire more rapidly by forcibly returning the trigger to the reset state.

28.     The '247 Patent invention teaches a forcible reset mode of the trigger by a cam while the bolt cycles to the rear and then returns forward to the in-battery position. The cam also limits movement of the trigger member. The cam acts to prevent the trigger member from being pulled a second (or subsequent) time until the bolt carrier has returned to the in-battery position.

**The Infringing Devices**

29.     On information and belief, Defendants have and are currently making, importing, using, selling, and/or offering for sale a "Super Safety" ("the Infringing Device"), which embodies the technology claimed in the '247 Patent.

> **Deleted:** Second

30.    On information and belief, Defendants made, imported, used, sold, and/or offered for sale the Infringing Device, which embodies the technology claimed in the '723 Patent prior to its expiration.

31.    On information and belief, Defendants have made or had made for them, imported, used, sold or offered for sale the Infringing Device via the Deez Nutz Tactical website, the Deez Nutz Tactical Facebook page, and numerous private Facebook groups.  Exemplary photographs of these are shown below:



Deleted: sell or offer

Deleted: (https://deeznutztactical.com),

Deleted: (https://www.facebook.com/profile.php?id=6155879394135 1) …

Deleted: Second

 

32.     Defendants sell a specially made cam and cam lever that replaces a standard AR-pattern safety selector, along with a trigger member specially cut to work with the cam. When these components are installed in combination with a standard AR-pattern hammer and disconnector, with standard springs, the combination creates the invention of the '247 and '723 Patents.

33.     Defendants also sell or are offering to sell precut triggers, which are specially designed triggers for use with a "Super Safety" (3 Position), in addition to spare "Super Safety" cam levers, both shown below.

 

Third Amended Complaint for Patent Infringement   8

Deleted: Second



34.     In addition, Defendants are selling or offering to sell products called the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit", which are "Super Safety" (3 Position) kits specially designed for the DB9 platform. When installed as instructed via a link provided on Defendants' website, (https://odysee.com/@M1ke843:f/DB-9-Alloy-standoff-ss-remix:d), the "DB9 Super Safety Curved Kit" and the "DB9 Super Safety Flat Kit" are covered by the '247 and '723 Patents.



Deleted: Second

35.     Further, Defendants are selling or offering to sell a product called the "DB9 Titanium Trip Bar", which is not a standard component intended for use with a traditional fire control group. Rather, it is specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device in a DB9 platform. They are offering the "DB9 Titanium Trip Bar" not only for use with devices they have sold directly, but also for use with "Super Safety" products made or sold by others. As such, the "DB9 Titanium Trip Bar" constitutes a material part of the invention claimed in the '247 and '723 Patents, is not a staple article or commodity of commerce suitable for substantial noninfringing use and is intended to be assembled into an infringing device.



36.     Defendants are selling or offering to sell "Centering Blocks," which are specially designed parts exclusively used in conjunction with the cam lever of a "Super Safety" (3 Position). These "Centering Blocks" are not standard components intended for use with a traditional fire control group. Rather, they are specially designed and manufactured for use exclusively with the "Super Safety" (3 Position) device. Defendants are offering these "Centering Blocks" not only for use with devices it has sold directly, but also for use with "Super Safety" products made or sold by others. As such, these "Centering Blocks" constitute a material part of the inventions claimed in the '247 and '723 Patents, are not staple articles or commodities

Third Amended Complaint for Patent Infringement   10

**Deleted:** Second

of commerce suitable for substantial noninfringing use and are intended to be assembled into infringing devices.



37.    Defendants are also selling or offering to sell products referred to as the "Jig" and the "Go/No-Go Gauge." These items are not standard tools or components intended for general use. Rather, they are specially designed and manufactured solely to assist others in modifying existing parts so they can specifically be used in connection with the "Super Safety" (3 Position) device, resulting in an infringing assembly. The "Jig" and "Go/No-Go Gauge" serve no substantial noninfringing use and exist only to facilitate the creation of infringing devices.



**Deleted:** Second

38.    Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer. 35 U.S.C. § 271(c).

39.    These parts sold by Defendants are components of a patented apparatus, constituting a material part of the invention. The Defendants know that these are especially made or especially adapted for use in an infringement of the '247 and '723 Patents, and not a staple article or commodity of commerce suitable for substantial noninfringing use. 35 U.S.C. § 271(c).

40.    These parts cannot be used in any manner that avoids infringement of the '247 and '723 Patents. The Infringing Devices and associated kits are not staple articles or commodities of commerce suitable for substantial noninfringing use and have no real utility outside the infringing combination or method described in the '247 and '723 Patents.

41.    Whoever actively induces infringement of a patent shall be liable as an infringer. 35 U.S.C. § 271(b).

42.    Defendants instruct purchasers to assemble the Infringing Devices in a way that induces infringement of the '247 and '723 Patents.

43.    The Infringing Devices also can operate in a "disconnector mode," which is much like that of a standard AR-15 trigger.  The user can switch between safe, standard semiautomatic with disconnector, and forced reset semiautomatic with cam modes by moving the safety selector laterally between positions.

Third Amended Complaint for Patent Infringement   12

Deleted:

Deleted: Second

44.     The user can slide the cam between safe and fire (forced reset semiautomatic with locking bar) modes.

45.     Defendants also sell "D2 Complete FCG Curved SS Kit," and "D2 Complete FCG Flat Super Safety Kit". Images of these products (Infringing Devices) are reproduced below.

**Deleted:** shown at

**Deleted:** shown at

**Deleted:** ///¶
///¶
///¶

 

Both of these items are described as "Everything you need to swap out your cassette style trigger for a Super Safe setup. Includes the usual super safety and precut trigger, as well as a complete fire control group including springs, hammer and trigger pins, disconnector and spring."

46.     The "D2 Complete FCG Curved SS Kit" and "D2 Complete FCG Flat Super Safety Kit" each include all the components of the patented combination claims and, thus, directly infringe the '247 Patent contributorily infringe and/or induce infringement of the '723 Patent.

47.     For the reasons explained in more specificity below, Defendants' Infringing Devices each infringe at least one claim of the '247 Patent and contributorily infringe and/or induce infringement of the '723 Patent and thus, Defendants are liable for patent infringement pursuant to 35 U.S.C. § 271(a), (b) and/or (c).

**Deleted:** Second

Third Amended Complaint for Patent Infringement    13

48.     In view of the Defendant's continued infringement after ABC's demand letter, the infringement is willful.

### COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

49.     The allegations set forth in paragraphs 1-48 are fully incorporated into this First Count for Relief.

| Deleted: 39 |
| --- |

50.     Upon information and belief, Defendants have and continue to willfully contributorily infringe and/or induce infringement of at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

51.     An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and use as intended is illustrated in the chart below:

| Claim Language | Infringing Device |
| --- | --- |
| 15. A firearm trigger mechanism comprising: | The Infringing Device is for a firearm, which has a lower receiver with a fire control pocket and assembly pin openings in side walls of the pocket.<br><br> |

| Deleted: Second |
| --- |

| | An AR-pattern firearm has a bolt carrier that reciprocates and pivotally displaces a hammer when cycled.  |
|---|---|
| a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, | The Infringing Device is installed in a fire control mechanism pocket of a receiver along with a hammer that has a sear catch and a hook for engaging a disconnector.  The hammer pivots on a transverse hammer pivot axis between set and released positions. The hammer is adapted to be pivoted rearward by rearward movement of a bolt carrier |

Deleted: Second



Hammer Set Position

Hammer Released Position

| | |
|---|---|
| a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, | The Infringing Device is installed with a trigger member in the fire control mechanism pocket that pivots on a transverse trigger member pivot axis between set and released positions and has a sear. |

Trigger Member Set Position

|  | 
Trigger Member Released Position |
| wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member, | The sear and sear catch are in engagement when the hammer and trigger member are in their set positions.<br>
Hammer and Trigger Member in Set Positions |
| said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and | The disconnector is adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis. The disconnector has a hook for engaging the hammer.<br> |
| a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being | The Infringing Device has a cam that is adapted to be movably mounted in the fire control mechanism pocket and includes a cam that has a cam lobe. |

**Deleted:** Second

| | |
|---|---|
| movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position, | The cam is movable between a first position and a second position. In the second position the cam lobe forces said trigger member towards the set position. <br><br>  <br> Cam Lobe First Position <br><br>  <br> Cam Lobe Second Position |
| whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set | In the standard semi-automatic mode, the cam is a first position for at least part of the cycle. Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook catches said hammer hook. |

**Deleted:** moved laterally to

**Deleted:** Second

Third Amended Complaint for Patent Infringement   18

positions so that the user can pull said
trigger member to fire the firearm, and



Cam in Standard Semiautomatic Disconnector
Mode



Thereafter, the bolt carrier moves forward into
battery, at which time a user must manually release
the trigger member to free said hammer from the
disconnector to permit the hammer and trigger
member to pivot to the set positions so that the user
can pull said trigger member to fire the firearm.



Deleted: Second

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

When in the forced reset semi-automatic mode, the cam is in a second position for at least part of the cycle.

**Deleted:** moved laterally to



Cam In Forced Reset Semiautomatic Mode

Rearward movement of the bolt carrier causes rearward pivoting of the hammer such that the disconnector hook doesn't catch the hammer hook.



Thereafter, the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**Deleted:** Second



52.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

53.    The Defendants instruct their customers to assemble the components they sell into an infringing combination of parts. Thus, Defendants actively induces infringement of the '247 Patent.

54.    Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

55.    Accordingly, Defendants' sell and/or offer to sell the Infringing Device is infringement under 35 U.S.C. § 271(b) and/or (c).

Deleted: sale

56.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is an indirect infringement of the '247 Patent.

57.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

Deleted: Second

58.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

### COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

59.    The allegations set forth in paragraphs 1-58 are fully incorporated into this Second Count for Relief.

Deleted: 4

60.    Defendants have and continue to directly infringe at least Claim 15 of the '247 Patent by making, using, selling, offering for sale, importing and/or providing and causing all components of the claimed combination (the Infringing Device) to be used without authority within the United States.

61.    An exemplary comparison of the Infringing Device with claim 15 of the '247 Patent when assembled and used as intended with the combination of parts supplied is illustrated in the chart in paragraph 42, above.

62.    Defendants' sell and/or offer to sell the Infringing Device "D2 Complete FCG Curved SS Kit" and the "D2 Complete FCG Flat Super Safety Kit." As such, Defendants are selling all the components of the patented combination. Thus, Defendants directly infringe the '247 Patent under 35 U.S.C. § 271(a).

63.    Accordingly, when a purchaser installs and uses Defendants' Infringing Devices as instructed, there is direct infringement of the '247 Patent.

64.    Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices is a direct infringement of the '247 Patent.

Deleted: Second

65.    Defendants' acts of infringement are willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

66.    Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

COUNT III – INDIRECT INFRINGEMENT OF THE '723 PATENT

67.    The allegations set forth in paragraphs 1-66 are fully incorporated into this Second Count for Relief.

68.    Upon recently learned information and belief, Defendants have contributorily infringed and/or induced infringement of Claim 1 of the '723 Patent prior to its expiration by making, using, selling, offering for sale, importing and/or providing and causing to be used without authority within the United States, Infringing Device.

69.    An image of the deeznutztactical.com website archived by Archive.org (https://deeznutztactical.com/product-category/3/) reproduced below shows that Defendants were selling or offering for sale the Infringing Devices at least as of August 5, 2024.



70.    An exemplary comparison of the Infringing Device with claim 1 of the '723

Patent when assembled and used as intended and instructed is illustrated in the chart below:

| Claim Language | Infringing Device |
|---|---|
| 1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of: | When installed and used as intended and instructed, the Infringing Device allows the user to use a method that accelerates the firing cycle of a semi-automatic firearm. |
| depressing a firearm trigger with a finger to discharge the firearm; | When installed and used as intended and instructed, the user depressing the trigger with a finger causes the firearm to discharge. |
| |  |
| activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position | When the firearm is discharged, a reciprocating mechanism (bolt or bolt carrier assembly) within the firearm is activated, it causes the cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position. |

| | |
|---|---|
| |  |
| until the reciprocating mechanism has reached an approximately closed, ready to fire position. | The trigger is held forward in the ready to fire position by the cam until the reciprocating mechanism (bolt or bolt carrier) until the reciprocating mechanism has reached an approximately closed, ready to fire position.<br><br> |

71.    Because the claim "comprises" specified steps, the fact that the Infringing Devices, when installed and used as the Defendants instruct, can also operate according to another method does not avoid infringement.

72.    When assembled as intended and instructed by the Defendants, the working components of the Infringing Device provide a component of a patented combination, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, which is the legal standard for contributory infringement.

Deleted: Second

73.     The Defendants instructed their customers to assemble the components they sold into an infringing combination of parts. Thus, Defendants actively induced infringement of the '247 Patent prior to its expiration.

74.     Accordingly, when a purchaser installed and used Defendants' Infringing Devices as instructed, there was direct infringement of the '723 Patent.

75.     Accordingly, the Defendants' making, using, selling, offering for sale, and/or importing of the Infringing Devices was an indirect infringement of the '723 Patent prior to its expiration under 35 U.S.C. § 271(b) and/or (c).

76.     Defendants' acts of infringement were willful and for no other purpose than to deliberately and irreparably harm Plaintiffs' business, sales, reputation, and good-will.

77.     Plaintiffs have been substantially harmed by Defendants' infringing activities and are entitled to relief including but not limited to a preliminary injunction, a permanent injunction, damages adequate to compensate for the infringement, being lost profits or no less than a reasonable royalty, treble damages, and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs' respectfully request that this Court enter:

a.     A judgment in favor of Plaintiffs that Defendants have infringed the '247 Patent and the '723 Patent (prior to expiration);

b.     A preliminary injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent during the pendency of this case, or other such equitable relief as the Court determines is warranted;

Third Amended Complaint for Patent Infringement   26

Deleted: <#>¶

Deleted: on

Deleted: Second

c.      A permanent injunction enjoining Defendants and their principals, agents, attorneys, servants, affiliates, employees, divisions, branches, subsidiaries, parents, and all others acting in active concert therewith from infringement or contributing to the infringement of the '247 Patent, or other such equitable relief as the Court determines is warranted;

d.      A judgment and order requiring Defendants to pay to Plaintiffs their damages, costs, expenses, and prejudgment and post-judgment interest for Defendants' infringement of the '247 Patent and the '723 Patent as provided under 35 U.S.C. § 284, and an accounting of any ongoing post-judgment infringement; and

e.      Any and all other relief, at law or equity, to which Plaintiffs may show themselves to be entitled.

<u>**DEMAND FOR JURY TRIAL**</u>

Plaintiffs, under Rule 38 of the Federal Rules of Civil Procedure, request a trial by jury of any issues so triable by right.

DATED:

_____
Jared W. Allen
Beard St. Clair Gaffney PA
Attorneys for Plaintiffs

Third Amended Complaint for Patent Infringement   27

---

**Deleted:** ///¶
///¶

**Formatted:** Line spacing:  single

**Deleted:** ¶
¶ … [1]

**Deleted:** Second

Page 27: [1] Deleted                              Author



Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 99 of 139

US012038247B2

(12) **United States Patent**
Blakley

(10) Patent No.: **US 12,038,247 B2**
(45) Date of Patent: **Jul. 16, 2024**

(54) **FIREARM TRIGGER MECHANISM**

(71) Applicant: **ABC IP, LLC**, Dover, DE (US)

(72) Inventor: **Brian A. Blakley**, Pinellas Park, FL (US)

(73) Assignee: **ABC IP, LLC**, Dover, DE (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

(21) Appl. No.: **18/325,225**

(22) Filed: **May 30, 2023**

(65) **Prior Publication Data**

US 2024/0085136 A1       Mar. 14, 2024

**Related U.S. Application Data**

(60) Provisional application No. 63/374,941, filed on Sep. 8, 2022.

(51) **Int. Cl.**
*F41A 19/45*       (2006.01)
*F41A 17/46*       (2006.01)
(Continued)

(52) **U.S. Cl.**
CPC .............. *F41A 19/45* (2013.01); *F41A 17/46* (2013.01); *F41A 19/10* (2013.01); *F41A 19/16* (2013.01); *F41A 19/15* (2013.01)

(58) **Field of Classification Search**
CPC .......... F41A 19/10; F41A 19/45; F41A 19/15; F41A 17/46
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

2,765,562 A    10/1956   Roper et al.
3,045,555 A     7/1962   Stoner
(Continued)

FOREIGN PATENT DOCUMENTS

DE         582963  C    8/1933
DE        4008351  A1   9/1991
(Continued)

OTHER PUBLICATIONS

Statutory Invention Registration No. H107, Inventor: Bauer, Published Aug. 5, 1986 (8 pages).

*Primary Examiner* — Reginald S Tillman, Jr.
(74) *Attorney, Agent, or Firm* — Wood Herron & Evans LLP

(57)                    **ABSTRACT**

A trigger mechanism that can be used in AR-pattern firearms has a hammer, a trigger member, a disconnector, a cam, and a "three position" safety selector having safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from a first position to a second position such that a cam lobe forces the trigger member towards the set position, but prior to reaching the set position the disconnector hook catches the hammer hook, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to their set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

**23 Claims, 18 Drawing Sheets**



# US 12,038,247 B2

Page 2

<table>
<tr><td colspan="2">(51) <strong>Int. Cl.</strong></td></tr>
<tr><td><em>F41A 19/10</em></td><td>(2006.01)</td></tr>
<tr><td><em>F41A 19/15</em></td><td>(2006.01)</td></tr>
<tr><td><em>F41A 19/16</em></td><td>(2006.01)</td></tr>
</table>

(58) **Field of Classification Search**
USPC ............................................. 42/69.01, 69.03
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | |
|---|---|---|
| 3,292,492 A | 12/1966 | Sturtevant |
| 3,301,133 A | 1/1967 | Sturtevant |
| 3,670,442 A | 6/1972 | Kennedy et al. |
| 4,023,465 A | 5/1977 | Inskip |
| 4,057,003 A | 11/1977 | Atchisson |
| 4,151,670 A | 5/1979 | Rath |
| 4,276,808 A | 7/1981 | York |
| 4,433,610 A | 2/1984 | Tatro |
| 4,463,654 A | 8/1984 | Barnes et al. |
| 4,516,466 A | 5/1985 | Jennie |
| 4,580,484 A | 4/1986 | Moore |
| 4,656,993 A | 4/1987 | Yuzawa et al. |
| 4,658,702 A | 4/1987 | Tatro |
| 4,693,170 A | 9/1987 | Atchisson |
| 4,697,495 A | 10/1987 | Beretta |
| 4,787,288 A | 11/1988 | Miller |
| 4,937,964 A | 7/1990 | Crandall |
| 5,149,898 A | 9/1992 | Chesnut et al. |
| 5,183,959 A | 2/1993 | McCoan et al. |
| 5,223,649 A | 6/1993 | Claridge |
| 5,339,721 A | 8/1994 | Beretta |
| 5,517,897 A | 5/1996 | Perrine |
| 5,614,691 A | 3/1997 | Taylor |
| 5,623,114 A | 4/1997 | Soper |
| 5,682,699 A | 11/1997 | Gentry |
| 5,701,698 A | 12/1997 | Wesp et al. |
| 5,704,153 A | 1/1998 | Kaminski et al. |
| 5,760,328 A | 6/1998 | Robbins |
| 5,770,814 A | 6/1998 | Ealovega |
| 6,101,918 A | 8/2000 | Akins |
| 6,360,467 B1 | 3/2002 | Knight |
| 6,601,331 B2 | 8/2003 | Salvitti |
| 6,718,680 B2 | 4/2004 | Roca et al. |
| 6,722,072 B1 | 4/2004 | McCormick |
| 6,851,346 B1 | 2/2005 | Herring |
| 6,889,459 B1 | 5/2005 | Salvitti |
| 6,976,416 B2 | 12/2005 | Ealovega |
| 7,051,638 B2 | 5/2006 | Thomele |
| 7,162,824 B1 | 1/2007 | McCormick |
| 7,213,359 B2 | 5/2007 | Beretta |
| 7,293,385 B2 | 11/2007 | McCormick |
| 7,337,574 B2 | 3/2008 | Crandall et al. |
| 7,347,021 B1 | 3/2008 | Jones |
| 7,398,723 B1 | 7/2008 | Blakley |
| 7,421,937 B1 | 9/2008 | Gangl |
| 7,634,959 B2 | 12/2009 | Frickey |
| 7,661,220 B2 | 2/2010 | Crandall et al. |
| 7,806,039 B1 | 10/2010 | Gomez |
| 8,037,805 B1 | 10/2011 | Neroni |
| 8,112,928 B2 | 2/2012 | Keough |
| 8,127,658 B1 | 3/2012 | Cottle |
| 8,156,854 B2 | 4/2012 | Brown |
| 8,443,537 B2 | 5/2013 | Curry |
| 8,464,454 B2 | 6/2013 | Martin et al. |
| 8,490,309 B2 | 7/2013 | Zukowski |
| 8,667,881 B1 | 3/2014 | Hawbaker |
| 8,695,477 B2 | 4/2014 | Esch |
| 8,720,096 B2 | 5/2014 | Siddle |
| 8,820,211 B1 | 9/2014 | Hawbaker |
| 8,893,607 B2 | 11/2014 | Audibert et al. |
| 8,925,234 B1 | 1/2015 | Barrett |
| 8,985,006 B1 | 3/2015 | Christensen et al. |
| 9,016,187 B1 | 4/2015 | Findlay |
| 9,021,732 B2 | 5/2015 | Johnson |
| 9,021,733 B1 | 5/2015 | DiChario |
| 9,052,150 B2 | 6/2015 | Talasco |

| | | |
|---|---|---|
| 9,121,661 B2 | 9/2015 | Calvete |
| 9,146,066 B1 | 9/2015 | Cason |
| 9,146,067 B2 | 9/2015 | Stakes |
| 9,182,189 B2 | 11/2015 | Seigler |
| 9,228,786 B2 | 1/2016 | Sullivan et al. |
| 9,310,150 B1 | 4/2016 | Geissele |
| 9,347,726 B1 | 5/2016 | Thomas |
| 9,448,023 B2 | 9/2016 | Sheets, Jr. et al. |
| 9,476,660 B2 | 10/2016 | Potter et al. |
| 9,513,076 B2 | 12/2016 | Kolev et al. |
| 9,568,264 B2 | 2/2017 | Graves |
| 9,618,288 B2 | 4/2017 | Wilson |
| 9,618,289 B1 | 4/2017 | Geissele |
| 9,625,231 B1 | 4/2017 | Hass |
| 9,631,886 B2 | 4/2017 | Findlay |
| 9,651,329 B2 | 5/2017 | Hittmann |
| 9,658,007 B2 | 5/2017 | Withey |
| 9,683,800 B2 | 6/2017 | Sewell, Jr. et al. |
| 9,733,031 B1 | 8/2017 | Sylvester et al. |
| 9,759,504 B2 | 9/2017 | Geissele |
| 9,777,980 B2 | 10/2017 | Heizer |
| 9,810,493 B2 | 11/2017 | Fluhr et al. |
| 9,810,496 B2 | 11/2017 | Kolev et al. |
| 9,816,772 B2 | 11/2017 | Graves |
| 9,829,263 B1 | 11/2017 | Bonner |
| 9,835,398 B2 | 12/2017 | Biegel |
| 9,863,730 B2 | 1/2018 | Elftmann |
| 9,869,522 B2 | 1/2018 | Larson, Jr. et al. |
| 9,874,417 B2 | 1/2018 | Zajk et al. |
| 9,927,197 B1 | 3/2018 | Geissele |
| 9,939,221 B2 | 4/2018 | Graves |
| 10,002,500 B2 | 6/2018 | Hall et al. |
| 10,006,734 B1 | 6/2018 | Findlay |
| 10,030,924 B1 | 7/2018 | Smith |
| 10,077,960 B2 | 9/2018 | Geissele |
| 10,107,580 B2 | 10/2018 | Fellows et al. |
| 10,254,067 B2 | 4/2019 | Foster |
| 10,267,584 B2 | 4/2019 | Kasanjian-King |
| 10,330,413 B2 | 6/2019 | Williams et al. |
| 10,488,136 B2 | 11/2019 | Sullivan et al. |
| 10,502,511 B2 | 12/2019 | Graves |
| 10,514,223 B1 | 12/2019 | Rounds |
| 10,584,932 B2 | 3/2020 | Foster |
| 11,287,205 B2 | 3/2022 | Biegel |
| 11,293,715 B1 | 4/2022 | Newsome et al. |
| 11,346,627 B1 | 5/2022 | DeMonico |
| 11,724,003 B2 | 8/2023 | Strbac |
| 2006/0048426 A1 | 3/2006 | Crandall |
| 2006/0101695 A1 | 5/2006 | Longueira |
| 2007/0051236 A1 | 3/2007 | Groves et al. |
| 2007/0199435 A1 | 8/2007 | Hochstrate et al. |
| 2009/0151213 A1 | 6/2009 | Bell |
| 2009/0188145 A1 | 7/2009 | Fluhr et al. |
| 2011/0209607 A1 | 9/2011 | St. George |
| 2013/0118343 A1 | 5/2013 | Hirt |
| 2014/0311004 A1 | 10/2014 | Barrett |
| 2016/0010933 A1 | 1/2016 | Bonner |
| 2016/0102933 A1 | 4/2016 | Graves |
| 2016/0161202 A1 | 6/2016 | Larue |
| 2017/0176124 A1 | 6/2017 | Wilson |
| 2017/0219307 A1 | 8/2017 | Foster |
| 2017/0276447 A1 | 9/2017 | Foster |
| 2017/0284761 A1 | 10/2017 | Lewis et al. |
| 2017/0299309 A1 | 10/2017 | Fellows et al. |
| 2017/0328663 A1 | 11/2017 | Fellows et al. |
| 2018/0066911 A1 | 3/2018 | Graves |
| 2018/0087860 A1 | 3/2018 | Sullivan et al. |
| 2018/0112944 A1 | 4/2018 | Underwood et al. |
| 2018/0195823 A1 | 7/2018 | Schafer et al. |
| 2018/0202740 A1 | 7/2018 | Elftmann, Jr. |
| 2018/0231342 A1 | 8/2018 | Martinez |
| 2021/0222974 A1 | 7/2021 | Graves |

FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| EP | | 1678458 B1 | 2/2012 |
| EP | | 2950033 B1 | 11/2016 |

Exhibit A

**US 12,038,247 B2**

Page 3

(56)  **References Cited**

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| TW | 409847 U | 10/2000 |
| WO | 2016/028337 A1 | 2/2016 |
| WO | 2018/058174 A1 | 4/2018 |

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 102 of 139



# FIG. 1

Exhibit A

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 103 of 139



# FIG. 2

Exhibit A



**FIG. 3**

Exhibit A

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 105 of 139



FIG. 4A

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 106 of 139



FIG. 4B

Exhibit A



FIG. 5A



Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 108 of 139





FIG. 5B

Case 4:25-cv-00298-AKB    Document 23    Filed 10/15/25    Page 109 of 139



FIG. 6A



Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 110 of 139





FIG. 6B

Case 4:25-cv-00298-AKB    Document 23    Filed 10/15/25    Page 111 of 139



FIG. 7

Exhibit A

Case 4:25-cv-00298-AKB    Document 23    Filed 10/15/25    Page 112 of 139



FIG. 8A



FIG. 8B

Case 4:25-cv-00298-AKB    Document 23    Filed 10/15/25    Page 114 of 139



FIG. 8C

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 115 of 139



FIG. 8D

Exhibit A

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 116 of 139



FIG. 9A

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 117 of 139



FIG. 9B

Case 4:25-cv-00298-AKB    Document 23    Filed 10/15/25    Page 118 of 139



**FIG. 9C**

Case 4:25-cv-00298-AKB  Document 23  Filed 10/15/25  Page 119 of 139



FIG. 9D

US 12,038,247 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**FIREARM TRIGGER MECHANISM**

RELATED APPLICATIONS

This application claims the priority benefit of U.S. Provisional Patent Application No. 63/374,941 filed Sep. 8, 2022, which is hereby incorporated by reference herein as if fully set forth in its entirety.

FIELD OF THE INVENTION

The present invention relates generally to a firearm trigger mechanism, and more particularly to a semiautomatic trigger that is selectively mechanically reset by movement of the bolt carrier.

BACKGROUND OF THE INVENTION

In a standard semiautomatic firearm, actuation of the trigger releases a sear, allowing a hammer or striker to fire a chambered ammunition cartridge. Part of the ammunition's propellant force is used to cycle the action, extracting and ejecting a spent cartridge and replacing it with a loaded cartridge. The cycle includes longitudinal reciprocation of a bolt and/or carrier, which also resets the hammer or striker.

A standard semiautomatic trigger mechanism includes a disconnector, which holds the hammer or striker in a cocked position until the trigger member is reset to engage the sear. This allows the firearm to be fired only a single time when the trigger is pulled and held, because the user is not typically able to release the trigger rapidly enough so that the sear engages the bolt or bolt carrier returns to its in-battery position. The disconnector prevents the firearm from either firing multiple rounds on a single pull of the trigger, or from allowing the hammer or striker to simply "follow" the bolt as it returns to battery without firing a second round, but leaving the hammer or striker uncocked.

For various reasons, shooters desire to increase the rate of semiautomatic fire. Sometimes this is simply for entertainment and the feeling of shooting a machine gun. In the past, users have been known to employ "bump firing" to achieve rapid semiautomatic fire. Bump firing uses the recoil of the semiautomatic firearm to fire shots in rapid succession. The process involves bracing the rifle with the non-trigger hand, loosening the grip of the trigger hand (but leaving the trigger finger in its normal position in front of the trigger), and pushing the rifle forward in order to apply pressure on the trigger from the finger while keeping the trigger finger stationary. When fired with the trigger finger held stationary, the firearm will recoil to the rear and allow the trigger to reset as it normally does. When the non-trigger hand pulls the firearm away from the body and back forward toward the original position, it causes the trigger to be pressed against the stationary finger again, firing another round as the trigger is pushed back.

Devices for increasing the rate of semiautomatic fire are shown in U.S. Pat. Nos. 9,568,264, 9,816,772, and 9,939,221, issued to Thomas Allen Graves. The devices shown in these patents forcefully reset the trigger with rigid mechanical contact between the trigger member and the bolt as the action cycles. To adapt this invention to an AR-pattern firearm, for example, would require not only a modified fire control mechanism, but also a modified bolt carrier.

Other devices for increasing the rate of semiautomatic fire are shown in the assignee's U.S. Pat. Nos. 10,514,223 and 11,346,627 and U.S. patent application Ser. No. 18/048,572 filed Oct. 21, 2022, all of which are hereby incorporated by reference as if fully set forth in their entirety. In these devices the hammer forces the trigger to the set position, and a locking bar prevents early hammer release.

Another device for increasing the rate of semiautomatic fire is shown in U.S. Pat. No. 7,398,723, issued on Jul. 15, 2008, to Brian A. Blakley, and is hereby incorporated by reference herein as if fully set forth in its entirety. The device shown in this patent has a pivoting cam which is contacted by the rearwardly traveling bolt carrier, pivoting the cam rearwardly such that the bottom surface of the cam presses downward on the trigger-extension, forcing the rear of the trigger down, and thereby moving forward the surface of the trigger that an operator's finger engages.

Further improvement in forced reset triggers is desired.

SUMMARY OF INVENTION

The present invention provides a semiautomatic trigger mechanism for increasing rate of fire that can be retrofitted into popular existing firearm platforms. In particular, this invention provides a trigger mechanism that can be used in AR-pattern firearms with an otherwise standard M16-pattern bolt carrier assembly. Embodiments of the present invention are particularly adaptable for construction as a "drop-in" replacement trigger module that only requires insertion of two assembly pins and the safety selector. Advantageously, the present invention provides a "three position" trigger mechanism having safe, standard semi-automatic, and forced reset semi-automatic positions.

In one aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset

3

semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector preventing the disconnector hook from catching the hammer hook. The trigger mechanism can further include a spring which biases the trigger member towards the set position.

In another aspect, a firearm trigger mechanism comprises a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the housing to pivot on the hammer pin between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and mounted in the housing to pivot on the trigger member pin between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the housing to pivot on the trigger member pin, a cam having a cam lobe and mounted in the housing to pivot on the cam pin, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The safety selector can have a protuberance thereon which, when the safety selector is in the forced reset semi-automatic position, contacts the disconnector prevent-

4

ing the disconnector hook from catching the hammer hook. The first and second pairs of transversely aligned openings in the housing can be adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket. The trigger mechanism can include a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm comprises a receiver having a fire control mechanism pocket therein, a reciprocating bolt carrier, a hammer having a sear catch and a hook for engaging a disconnector and mounted in the fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of the bolt carrier, a trigger member having a sear and mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, the cam being pivotable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and pivoting of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to pivot to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

The firearm can further comprise a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough, the hammer mounted on the hammer pin, the trigger member and disconnector mounted on the trigger member pin. The receiver can have a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings, the housing first pair of openings coaxial with the receiver first pair of openings and the housing second pair of openings coaxial with the receiver second pair of openings, a first assembly pin passing through the receiver first pair of openings and through the housing first pair of openings, and a second assembly pin passing

5

through the receiver second pair of openings and through the housing second pair of openings. The firearm can further comprise a spring which biases the trigger member towards the set position. The spring can be a torsion spring.

In another aspect, a firearm trigger mechanism comprises a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, the hammer adapted to be pivoted rearward by rearward movement of a bolt carrier, a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions, wherein the sear and sear catch are in engagement in the set positions of the hammer and trigger member and are out of engagement in the released positions of the hammer and trigger member, a disconnector having a hook for engaging the hammer and adapted to be mounted in the fire control mechanism pocket to pivot on the transverse trigger member pivot axis, a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, the cam being movable between a first position at which the cam lobe does not force the trigger member towards the set position and a second position at which the cam lobe does force the trigger member towards the set position, and a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions. In the standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member towards the set position but prior to reaching the set position the disconnector hook catches the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time a user must manually release the trigger member to free the hammer from the disconnector to permit the hammer and trigger member to pivot to the set positions so that the user can pull the trigger member to fire the firearm. In the forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of the hammer and movement of the cam from the first position to the second position such that the cam lobe forces the trigger member to the set position, the safety selector preventing the disconnector hook from catching the hammer hook, and thereafter forward movement of the bolt carrier causes the cam to move to the first position, at which time the user can pull the trigger member to fire the firearm without manually releasing the trigger member.

Other aspects, features, benefits, and advantages of the present invention will become apparent to a person of skill in the art from the detailed description of various embodiments with reference to the accompanying drawing figures, all of which comprise part of the disclosure.

## BRIEF DESCRIPTION OF THE DRAWINGS

Like reference numerals are used to indicate like parts throughout the various drawing figures, wherein:

FIG. **1** is a top front right perspective view of a drop-in trigger module for an AR-pattern firearm according to one embodiment of the invention.

FIG. **2** is a top rear right perspective view thereof.

FIG. **3** is a top rear right exploded perspective view thereof.

6

FIG. **4**A is a top rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **4**B is a bottom rear right cross-sectional view thereof with the safety selector in the safe position and with the hammer and trigger member in their set positions.

FIG. **5**A is a top rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **5**B is a bottom rear right cross-sectional view thereof with the safety selector in the standard semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**A is a top rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **6**B is a bottom rear right cross-sectional view thereof with the safety selector in the forced reset semi-automatic position and with the hammer and trigger member in their set positions.

FIG. **7** is a cross-sectional view showing the trigger module installed in a typical AR15-pattern lower receiver, with the hammer and trigger member in their set positions and with the bolt carrier in an in-battery position, and with the safety selector in the safe position.

FIG. **8**A is a view similar to FIG. **7** but with the safety selector in the standard semi-automatic position.

FIG. **8**B is a view similar to FIG. **8**A but after the trigger has been pulled to drop the hammer.

FIG. **8**C is a view similar to FIG. **8**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **8**D is a view similar to FIG. **8**C but with the bolt carrier having returned to battery and the disconnector having caught the hammer.

FIG. **9**A is a view similar to FIG. **7** but with the safety selector in the forced reset semi-automatic position.

FIG. **9**B is a view similar to FIG. **9**A but after the trigger has been pulled to drop the hammer.

FIG. **9**C is a view similar to FIG. **9**B but with the bolt carrier cycling to the rear to pivot the hammer and cam.

FIG. **9**D is a view similar to FIG. **9**C but with the bolt carrier having returned to battery and the hammer and trigger having returned to their set positions.

## DETAILED DESCRIPTION OF THE DRAWINGS

With reference to the drawing figures, this section describes particular embodiments and their detailed construction and operation. Throughout the specification, reference to "one embodiment," "an embodiment," or "some embodiments" means that a particular described feature, structure, or characteristic may be included in at least one embodiment. Thus, appearances of the phrases "in one embodiment," "in an embodiment," or "in some embodiments" in various places throughout this specification are not necessarily all referring to the same embodiment. Furthermore, the described features, structures, and characteristics may be combined in any suitable manner in one or more embodiments. In view of the disclosure herein, those skilled in the art will recognize that the various embodiments can be practiced without one or more of the specific details or with other methods, components, materials, or the like. In some instances, well-known structures, materials, or operations are not shown or not described in detail to avoid obscuring aspects of the embodiments. "Forward" will indi-

Case 4:25-cv-00299-AKB Document 23 Filed 10/15/25 Page 123 of 139

Exhibit A

7

cate the direction of the muzzle and the direction in which projectiles are fired, while "rearward" will indicate the opposite direction. "Lateral" or "transverse" indicates a side-to-side direction generally perpendicular to the axis of the barrel. Although firearms may be used in any orientation, "left" and "right" will generally indicate the sides according to the user's orientation, "top" or "up" will be the upward direction when the firearm is gripped in the ordinary manner. QAs used herein, "transverse" means a side-to-side direction generally perpendicular to the longitudinal axis of the barrel.

Referring first to FIGS. 1-6B, there is illustrated a "drop-in" trigger module 10 adapted for use in an AR-pattern firearm according to a first embodiment of the present invention. As used herein, "AR-pattern" firearm includes the semiautomatic versions of the AR10 and AR15 firearms and variants thereof of any caliber, including pistol caliber carbines or pistols using a blow-back bolt. While select fire (fully automatic capable) versions of this platform, such as the M16 and M4, are also AR-pattern firearms, this invention only relates to semiautomatic firearm actions. The concepts of this invention may be adaptable to other popular semiautomatic firearm platforms, such as the Ruger 10/22™, AK-pattern firearms, and HK-pattern firearms.

The module 10 includes a frame or housing 12 sized and shaped to fit within the internal fire control pocket of an AR-pattern firearm lower receiver 14. Lower receiver parts not important to the present invention are well-known in the art and are omitted from the figures for clarity. The housing 12 includes left and right sidewalls 16, 18 which extend substantially vertically and parallel to one another in a laterally spaced-apart relationship. The sidewalls 16, 18 may be interconnected by front and rear sidewalls 20, 22. The sidewalls 16, 18 include first and second pairs of aligned openings 24, 26 for receiving hollow transverse pins 30, 32 upon which a hammer 36 and trigger member 38 pivot. The openings 24, 26 are located coaxially with openings 42, 44 in the lower receiver 14. Standard AR-pattern hammer and trigger pins 46, 48 pass through the openings 42, 44 in the lower receiver 14 and through the hollow transverse pins 30, 32 to assemble the housing 12 into the lower receiver 14. Thus, the pins 30, 32 retain the hammer 36 and trigger member 38 in the housing 12 in modular fashion, whereas the pins 46, 48 retain the trigger module 10 in the lower receiver 14.

The hammer 36 has a hammer head 50, a sear catch 52, and a hammer hook 53. The hammer 36 is spring biased towards a forward position by a standard AR-pattern hammer torsion spring (not shown).

The trigger member 38 has a trigger blade 54 that extends downwardly. The trigger blade 54 is the part of the trigger member 38 contacted by a user's finger to actuate the trigger mechanism. The trigger blade 54 may be curved (as shown) or straight, as desired. The trigger member 38 has a sear 56. When the sear 56 and the sear catch 52 are engaged, the hammer 36 and trigger member 38 are in their set positions. When the sear 56 and sear catch 52 are not engaged, the hammer 36 and trigger member 38 are in their released positions. The trigger member 38 also has a cam follower 58. The trigger member 38 is spring biased by a standard AR-pattern trigger member torsion spring (not shown) so that the trigger blade 54 is spring biased towards a forward position.

A disconnector 60 is pivoted on the hollow transverse pin 32 upon which the trigger member 38 pivots. The disconnector 60 has a disconnector hook 64 and a tail 66. The tail 66 of the disconnector 60 is spring biased upwardly away

8

from a tail 68 of the trigger member 38 by a standard AR-pattern disconnector compression spring 67.

A cam 72 is movably mounted to the housing 12. For example, the cam 72 can be pivoted on a cam pin 74 that is installed in aligned openings 76 in the sidewalls 16, 18 of the housing 12. The cam 72 has a cam lobe 78 that interacts with the cam follower 58, in a manner to be described below. The cam 72 has a first contact surface 82 on an upper forward portion thereof and a second contact surface 84 on an upper rearward portion thereof. The cam 72 has a notch 86 below the second contact surface 84 to provide clearance for the rear wall 22 of the housing 12. Alternatively, the cam 72 can be slidably mounted to the housing 12 with or without spring bias.

An upper receiver 90 houses a bolt carrier assembly 92. As is well-known in the art, the bolt carrier assembly 92 (or blow-back bolt) slidably reciprocates in the upper receiver 90 and engages the breach of a barrel or barrel extension. As used herein, "bolt carrier" and "bolt carrier assembly" may be used interchangeably and include a blow-back type bolt used in pistol caliber carbine configurations of the AR-platform. The bolt carrier assembly 92 used with the embodiments of this invention can have either a standard mil-spec M16-pattern bolt carrier, a standard AR15-pattern bolt carrier, or some variation of the two, depending on the design of the cam 72, and whether operated by a gas direct impingement system or a gas piston system. The bolt carrier assembly 92 has an engagement surface 94 in a rear portion 96 of the bolt carrier body 98. As in an ordinary AR15-pattern configuration, during rearward travel of the bolt carrier assembly 92 a lower surface 102 in a forward portion 104 of the bolt carrier body 98 contacts the face of the hammer head 50 causing the hammer 36 to pivot rearward. During further rearward travel of bolt carrier assembly 92 the lower surface 102 of the bolt carrier body 98 contacts the surface 82 of the cam 72 to pivot cam 72 in a first direction from a first position to a second position. During forward travel of the bolt carrier assembly 92 the engagement surface 94 of the bolt carrier body 98 contacts the surface 84 of the cam 72 to pivot the cam 72 in a second opposite direction from the second position to the first position.

A three position safety selector 110 has safe, standard semi-automatic, and forced reset semi-automatic positions. When in the safe position (safety selector indicator 111 pointing forward), a wide semi-circular portion 112 of the safety selector 110 prevents the trigger blade 54 from being pulled (FIGS. 4A, 4B, and 7). When in the standard semi-automatic position (safety selector indicator 111 pointing upward), a flat portion 114 of the safety selector 110 permits the trigger blade 54 to be pulled. The disconnector 60 can pivot with the trigger member 38 and the disconnector hook 64 can catch the hammer hook 53 during rearward pivoting travel of the hammer head 50. (FIGS. 5A and 5B). When in the forced reset semi-automatic position (safety selector indicator 111 pointing rearward), a narrow semi-circular portion 116 permits the trigger blade 54 to be pulled but prevents the disconnector 60 from pivoting with the trigger member 38 thus preventing the disconnector hook 64 from catching the hammer hook 53 during rearward pivoting travel of the hammer head 50. (FIGS. 6A and 6B). In other words, in the forced reset semi-automatic position, the disconnector 60 is "disabled" in that the disconnector hook 64 is unable to catch the hammer hook 53 during cycling of the bolt carrier assembly 92.

Referring now to FIGS. 8A-8D, with the safety selector 110 set in the standard semi-automatic position, rearward

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 124 of 139

US 12,038,247 B2

9

10

finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge (not shown), and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During pivoting travel of the hammer **36** the disconnector hook **64** catches the hammer hook **53**. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** may acts upon the cam follower **58** to pivot the trigger member **38** counter-clockwise. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point rearward finger pressure on the trigger blade **54** must be released to allow the sear **56** to engage the sear catch **52**, returning the hammer **36** and trigger member **38** to their set positions. Thereafter the user can reapply rearward finger pressure on the trigger blade **54** to fire another round.

Referring now to FIGS. 9A-9D, with the safety selector **110** set in the forced reset semi-automatic position, rearward finger pressure on the trigger blade **54** causes the trigger member **38** to rotate clockwise. The narrow semi-circular portion **116** of the safety selector **110** prevents the disconnector **60** from rotating with the trigger member **38**, thus "disabling" the disconnector **60**, preventing the disconnector hook **64** from catching the hammer hook **53**. Depending on the position of the cam **72**, the cam follower **58** may or may not act upon the cam lobe **78** to pivot the cam **72** clockwise. Rotation of the trigger member **38** causes the sear **56** to disengage from the sear catch **52** of the hammer **36**. This allows the hammer **36** to drop by spring force onto the firing pin **99** of the bolt carrier assembly **92**, discharging an ammunition cartridge, and causing the action to cycle by moving the bolt carrier assembly **92** rearward. Rearward travel of the bolt carrier assembly **92** causes the lower surface **102** to contact the face of the hammer head **50** and pivot the hammer **36** counter-clockwise. During further rearward travel of the bolt carrier assembly **92** the lower surface **102** contacts the surface **82** of the cam **72** to pivot the cam **72** counter-clockwise. As the cam **72** pivots counter-clockwise, the cam lobe **78** acts upon the cam follower **58** to the pivot trigger member **38** counter-clockwise. The bolt carrier assembly **92** thereby forces the hammer **36** and trigger member **38** to their set positions wherein the sear **56** engages the sear catch **52**. Forward travel of the bolt carrier assembly **92** returning to battery causes the surface **94** to contact the surface **84** of the cam **72** to pivot the cam **72** clockwise. At this point the user can reapply rearward finger pressure on the trigger blade **54** to fire another round, without first manually releasing rear finger pressure on the trigger blade **54**.

Thus, as the bolt carrier assembly **92** returns forward, the trigger member **38** is held in its set position by cam **72**. The trigger member **38** cannot be pulled to release the sear/sear catch engagement, thus precluding early hammer release or "hammer follow" against the bolt carrier assembly **92** and firing pin **99** as the bolt carrier assembly **92** is returning to battery. When the bolt carrier assembly **92** has reached (or

nearly reached) its closed, in-battery position, the engagement surface **94** contacts and forwardly displaces the contact surface **84** of cam **72**, disengaging the cam lobe **78** from the cam follower **58**, allowing the trigger blade **54** to be pulled. Again, this prevents early hammer release and contact of the hammer against the firing pin before the bolt is completely locked and in-battery.

While various embodiments of the present invention have been described in detail, it should be apparent that modifications and variations thereto are possible, all of which fall within the true spirit and scope of the invention. Therefore, the foregoing is intended only to be illustrative of the principles of the invention. The invention resides in each individual feature described herein, alone, and in any and all combinations and subcombinations of any and all of those features. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not intended to limit the invention to the exact construction and operation shown and described. Accordingly, all suitable modifications and equivalents may be included and considered to fall within the scope of the invention, defined by the following claim or claims.

What is claimed is:

1. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

US 12,038,247 B2

**11**

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**2**. The trigger mechanism of claim **1**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**3**. The trigger mechanism of claim **1** further including a spring which biases said trigger member towards said set position.

**4**. A firearm trigger mechanism comprising:

a housing adapted to be installed in a fire control mechanism pocket of a receiver and having a first pair of transversely aligned openings for receiving a hammer pin, a second pair of transversely aligned openings for receiving a trigger pin, and a third pair of transversely aligned openings for receiving a cam pin,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said housing to pivot on said hammer pin between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and mounted in said housing to pivot on said trigger member pin between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said housing to pivot on said trigger member pin,

a cam having a cam lobe and mounted in said housing to pivot on said cam pin, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

wherein in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward

**12**

pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**5**. The trigger mechanism of claim **4**, wherein said safety selector has a protuberance thereon which, when said safety selector is in said forced reset semi-automatic position, contacts said disconnector preventing said disconnector hook from catching said hammer hook.

**6**. The trigger mechanism of claim **4**, wherein said first and second pairs of transversely aligned openings in said housing are adapted to be aligned with first and second pairs of transversely aligned assembly pin openings in the fire control mechanism pocket.

**7**. The trigger mechanism of claim **4** further including a spring which biases said trigger member towards said set position.

**8**. The trigger mechanism of claim **7** wherein said spring is a torsion spring.

**9**. A firearm comprising:

a receiver having a fire control mechanism pocket therein,

a reciprocating bolt carrier,

a hammer having a sear catch and a hook for engaging a disconnector and mounted in said fire control mechanism pocket to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of said bolt carrier,

a trigger member having a sear and mounted in said fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and mounted in said fire control mechanism pocket to pivot on said transverse trigger member pivot axis,

a cam having a cam lobe and mounted in said fire control mechanism pocket to pivot on a transverse cam pivot axis, said cam being pivotable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector mounted in said fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said

US 12,038,247 B2

hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire said firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of said bolt carrier causes rearward pivoting of said hammer and pivoting of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of said bolt carrier causes said cam to pivot to said first position, at which time the user can pull said trigger member to fire said firearm without manually releasing said trigger member.

**10**. The firearm of claim **9** further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**11**. The firearm of claim **10** further comprising:

said receiver having a first pair of transversely aligned assembly pin openings and a second pair of transversely aligned assembly pin openings,

said housing first pair of openings coaxial with said receiver first pair of openings and said housing second pair of openings coaxial with said receiver second pair of openings,

a first assembly pin passing through said receiver first pair of openings and through said housing first pair of openings, and

a second assembly pin passing through said receiver second pair of openings and through said housing second pair of openings.

**12**. The firearm of claim **10** further comprising a spring which biases said trigger member towards said set position.

**13**. The firearm of claim **12** wherein said spring is a torsion spring.

**14**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse trigger member pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member towards said set position and a second position at which said cam lobe does force said trigger member towards said set position, and

a safety selector adapted to be mounted in the fire control mechanism pocket to pivot between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member towards said set position but prior to reaching said set position said disconnector hook catches said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, rearward movement of the bolt carrier causes rearward pivoting of said hammer and movement of said cam from said first position to said second position such that said cam lobe forces said trigger member to said set position, said safety selector preventing said disconnector hook from catching said hammer hook, and thereafter forward movement of the bolt carrier causes said cam to move to said first position, at which time the user can pull said trigger member to fire the firearm without manually releasing said trigger member.

**15**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

said disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse disconnector pivot axis, and

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position and a second position, in said second position said cam lobe forces said trigger member towards said set position,

whereupon in a standard semi-automatic mode, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in a forced reset semi-automatic mode, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from

Case 4:25-cv-00298-AKB   Document 23   Filed 10/15/25   Page 127 of 139

US 12,038,247 B2

catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**16**. The trigger mechanism of claim **15**, further comprising:

a housing having a first pair of transversely aligned openings with a hammer pin therethrough and a second pair of transversely aligned openings with a trigger member pin therethrough,

said hammer mounted on said hammer pin, said trigger member and disconnector mounted on said trigger member pin.

**17**. The trigger mechanism of claim **15**, further comprising a spring which biases said trigger member towards said set position.

**18**. The trigger mechanism of claim **17**, wherein said spring is a torsion spring.

**19**. The trigger mechanism of claim **15**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

**20**. A firearm trigger mechanism comprising:

a hammer having a sear catch and a hook for engaging a disconnector and adapted to be mounted in a fire control mechanism pocket of a receiver to pivot on a transverse hammer pivot axis between set and released positions, said hammer adapted to be pivoted rearward by rearward movement of a bolt carrier,

a trigger member having a sear and adapted to be mounted in the fire control mechanism pocket to pivot on a transverse trigger member pivot axis between set and released positions,

wherein said sear and sear catch are in engagement in said set positions of said hammer and trigger member and are out of engagement in said released positions of said hammer and trigger member,

a disconnector having a hook for engaging said hammer and adapted to be mounted in the fire control mechanism pocket to pivot on said transverse disconnector pivot axis,

a cam having a cam lobe and adapted to be movably mounted in the fire control mechanism pocket, said cam being movable between a first position at which said cam lobe does not force said trigger member into said set position and a second position at which said cam lobe does force said trigger member into said set position, and

a safety selector adapted to be movably mounted in the fire control mechanism pocket to move between safe, standard semi-automatic, and forced reset semi-automatic positions,

whereupon in said standard semi-automatic position, said cam is in said first position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook catches said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time a user must manually release said trigger member to free said hammer from said disconnector to permit said hammer and trigger member to pivot to said set positions so that the user can pull said trigger member to fire the firearm, and

whereupon in said forced reset semi-automatic position, said cam is in said second position, rearward movement of the bolt carrier causes rearward pivoting of said hammer such that said disconnector hook is prevented from catching said hammer hook, and thereafter the bolt carrier moves forward into battery, at which time the user can pull said trigger member to fire the firearm.

**21**. The trigger mechanism of claim **20**, wherein said cam is not a part of said safety selector.

**22**. The trigger mechanism of claim **20**, wherein said safety selector moves between safe, standard semi-automatic, and forced reset semi-automatic positions by rotation.

**23**. The trigger mechanism of claim **20**, wherein the trigger member pivot axis and disconnector pivot axis are coaxial.

* * * * *

US007398723B1

(12) **United States Patent**

Blakley

(10) Patent No.: **US 7,398,723 B1**

(45) Date of Patent: **Jul. 15, 2008**

(54) **TRIGGER FORWARD DISPLACEMENT SYSTEM AND METHOD**

(76) Inventor: **Brian A. Blakley**, 8971 - 67th St. N., Pinellas Park, FL (US) 33782

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 516 days.

(21) Appl. No.: **10/424,676**

(22) Filed: **Apr. 25, 2003**

(51) **Int. Cl.**
*F41A 19/02* (2006.01)

(52) **U.S. Cl.** .................. **89/129.01**; 89/129.02; 89/130; 89/131; 42/69.01

(58) **Field of Classification Search** ................ 42/69.01, 42/70.06; 89/128–131, 129.01, 129.02
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,023,465 A | * | 5/1977 | Inskip | 89/131 |
| 4,057,003 A | * | 11/1977 | Atchisson | 89/138 |
| 4,463,654 A | * | 8/1984 | Barnes et al. | 89/128 |
| 4,580,484 A | * | 4/1986 | Moore | 89/128 |
| 4,697,495 A | * | 10/1987 | Beretta | 89/143 |
| 4,787,288 A | * | 11/1988 | Miller | 89/27.3 |
| 5,614,691 A | * | 3/1997 | Taylor | 89/128 |
| 6,101,918 A | * | 8/2000 | Akins | 89/129.01 |

* cited by examiner

*Primary Examiner*—Troy Chambers
(74) *Attorney, Agent, or Firm*—Edward P Dutkiewicz

(57) **ABSTRACT**

A semi-automatic firearm has forward and rearward ends. A receiver has a safety selector aperture, a barrel, a reciprocating loading mechanism and a magazine. A trigger finger and inner portions. The inner portion has a seat with a groove. A disconnector has a hammer hook coupled to the trigger. A trigger mounting pin couples the trigger to the firearm. A trigger disconnector spring couples the trigger and the disconnector. A hammer having an upper striking portion with a disconnector hook receptacle. A hammer mounting pin couples the hammer to the firearm. A hammer spring is coupled to the hammer and hammer mounting pin. A cam body subassembly comprises a cam body housing, a cam and a cam mounting pin. The cam body subassembly is coupled to the firearm. A safety selector is coupled to the firearm. A trigger extender is mated with the upward trigger groove.

**1 Claim, 5 Drawing Sheets**







FIG 1

FIG 2



FIG 2A

FIG 2B



FIG 2C



FIG 3A



FIG 3

FIG 4



FIG 5

**1**

## TRIGGER FORWARD DISPLACEMENT SYSTEM AND METHOD

### BACKGROUND OF THE INVENTION

1. Field of the Invention

The present invention relates to a trigger forward displacement system and method and more particularly pertains to increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

2. Description of the Prior Art

The use of accelerating assemblies for semi-automatic firearms is known in the prior art. More specifically, accelerating assemblies for semi-automatic firearms previously devised and utilized for the purpose of accelerating the cyclic firing rate of semi-automatic firearms are known to consist basically of familiar, expected, and obvious structural configurations, notwithstanding the myriad of designs encompassed by the crowded prior art which has been developed for the fulfillment of countless objectives and requirements.

By way of example, U.S. Pat. No. 6,101,918 issued Aug. 15, 2000 to Akins discloses a method and apparatus for accelerating the cyclic firing rate or a semi-automatic firearm. U.S. Pat. No. 4,023,465 issued May 17, 1977 to Inskip discloses a firearm. U.S. Pat. No. 4,787,288 issued to Miller discloses a rapid fire trigger activator. Lastly, U.S. Pat. No. 4,697,495 issued Oct. 6, 1987 to Beretta discloses a tripping mechanism for the conversion closed-bolt automatic rifles to open-bolt ones.

While these devices fulfill their respective, particular objectives and requirements, the aforementioned patents do not describe a trigger forward displacement system and method that allows increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

In this respect, the trigger forward displacement system and method according to the present invention substantially departs from the conventional concepts and designs of the prior art, and in doing so provides an apparatus primarily developed for the purpose of increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

Therefore, it can be appreciated that there exists a continuing need for a new and improved trigger forward displacement system and method which can be used for increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm. In this regard, the present invention substantially fulfills this need.

### SUMMARY OF THE INVENTION

In view of the disadvantages inherent in the known types of accelerating assemblies for semi-automatic firearms now present in the prior art, the present invention provides an improved trigger forward displacement system and method. As such, the general purpose of the present invention, which will be described subsequently in greater detail, is to provide a new and improved trigger forward displacement system and method which has all the advantages of the prior art and none of the disadvantages.

To attain this, the present invention essentially comprises a semi-automatic firearm. The semi-automatic firearm has a forward end and a rearward end. The semi-automatic firearm is comprised of a receiver. The receiver has a safety selector aperture. The semi-automatic firearm has a barrel and a bolt. The semi-automatic firearm further has a reciprocating loading mechanism and a magazine.

**2**

A trigger is provided. The trigger is fabricated of rigid material. The trigger has an outer finger portion and an inner portion. The inner portion has a forward end and a rearward end. The finger portion has a generally forwardly displaced and downwardly projecting arcuate configuration. The rearward inner portion has a seat. The seat comprises a generally rectangularly configured rearward portion. The seat has two upwardly projecting side walls and a rear wall. The walls form an upwardly displaced groove. The groove has a first width. The inner portion of the trigger also has upwardly facing spring recess. The recesses are forward of the groove. The forwardmost end of the inner portion has a beveled sear portion. A mounting pin hole is provided through the inner portion of the trigger. In this manner the trigger is allowed to rotate about the pin hole.

A disconnector is provided next. The disconnector is fabricated of rigid material. The disconnector has a lower attachment portion and an upper portion. A mounting pin hole is provided through the lower attachment portion. The lower attachment portion has a downwardly disposed spring recess. The upper portion has a generally forwardly oriented hooked configuration with a hammer hook.

Provided next is a trigger mounting pin. The trigger mounting pin couples the disconnector and the trigger to the firearm receiver. In this manner the pivotal motion of the trigger and the disconnector is allowed about the trigger pin.

A trigger disconnector spring is provided. The trigger disconnector spring couples the trigger and the disconnector. The spring is nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

Next, a hammer is provided. The hammer has a pair of parallel side walls. A thickness is provided between the sidewalls. The hammer has a lower attachment portion and an upper striking portion. A hammer mounting pin aperture is provided through the attachment portion from side to side. The lower portion has a trigger sear catch. The trigger sear engages the trigger and the hammer. The upper portion has a rearwardly displaced disconnector hook receptacle a striking surface. The striking surface is forwardly disposed.

A hammer mounting pin is provided. The hammer mounting pin is sized to couple the hammer and the receiver. In this manner the hammer is allowed to pivot about the hammer mounting pin.

Provided next is a hammer spring. The hammer spring is coupled to the hammer mounting pin. The hammer spring pushes the hammer in a forwardly direction.

Also provided is a cam body subassembly. The cam body subassembly comprises a cam body housing, a cam, and a cam mounting pin. The cam body has a generally rectangular configuration. The cam body has two side surfaces, a rear surface, and a forward surface. The cam body further has a top surface and a bottom surface. The body has a forward portion and a rearward portion. A side to side recess is provided through the rearward portion. In this manner the receiver of the firearm is accommodated. The forward portion has a pair of forwardly projecting cam holders. Through each cam holder is a cam holder pin aperture. The cam has a lower portion. The lower portion has a lower surface. The cam has an upper portion, a front portion, and a rear portion. The lower portion has a generally rectilinear configuration. The upper portion has an upwardly projecting front and rear beveled configuration. In this manner a point is formed. A cam pin aperture is provided in the cam. The cam pin aperture aligns with and mates with the cam holder pin apertures. The cam mounting pin is sized to be received by and mated with the

US 7,398,723 B1

**3**

cam holder pin apertures. The cam mounting pin allows the pivotal rotation of the cam about the mounting pin.

Further provided is a safety selector. The safety selector has an outer portion and an inner portion. The outer portion comprises a downwardly displaced lever. The inner portion has a generally solid tubular configuration. The inner portion has a plurality of flat recessed surfaces. The selector is mated with and received by the receiver safety aperture. In this manner the selector is rotatable when in place.

Last provided is a trigger extender. The trigger extender is in a generally rectilinear configuration. The trigger extender has a stepped upper surface and a lower surface. The trigger extender has two parallel side surfaces and parallel front and rear surfaces. The lower surface has a first external side. The first external side has a side to side first width to be received by and mated with the upward trigger groove. The stepped upper surface is flattened and mated with the lower surface of the lower portion of the cam. Mating with the cam is allowed in a rearward position and a disconnected with the cam in the forward position.

There has thus been outlined, rather broadly, the more important features of the invention in order that the detailed description thereof that follows may be better understood and in order that the present contribution to the art may be better appreciated. There are, of course, additional features of the invention that will be described hereinafter and which will form the subject matter of the claims attached.

In this respect, before explaining at least one embodiment of the invention in detail, it is to be understood that the invention is not limited in its application to the details of construction and to the arrangements of the components set forth in the following description or illustrated in the drawings. The invention is capable of other embodiments and of being practiced and carried out in various ways. Also, it is to be understood that the phraseology and terminology employed herein are for the purpose of descriptions and should not be regarded as limiting.

As such, those skilled in the art will appreciate that the conception, upon which this disclosure is based, may readily be utilized as a basis for the designing of other structures, methods and systems for carrying out the several purposes of the present invention. It is important, therefore, that the claims be regarded as including such equivalent constructions insofar as they do not depart from the spirit and scope of the present invention.

It is therefore an object of the present invention to provide a new and improved trigger forward displacement system and method which has all of the advantages of the prior art accelerating assemblies for semi-automatic firearms and none of the disadvantages.

It is another object of the present invention to provide a new and improved trigger forward displacement system and method which may be easily and efficiently manufactured and marketed.

It is further an object of the present invention to provide a new and improved trigger forward displacement system and method which is of durable and reliable construction.

An even further object of the present invention is to provide a new and improved trigger forward displacement system and method which is susceptible of a low cost of manufacture with regard to both materials and labor, and which accordingly is then susceptible of low prices of sale to the consuming public, thereby making such trigger forward displacement system and method economically available to the buying public.

Even still another object of the present invention is to provide a trigger forward displacement system and method

**4**

for increasing the cyclic rate of actuating the trigger and discharging a semi-automatic firearm.

Lastly, it is an object of the present invention to provide a new and improved trigger forward displacement system and method. A semi-automatic firearm has forward and rearward ends. A receiver has a safety selector aperture, a barrel, a reciprocating loading mechanism and a magazine. A trigger having finger and inner portions. The inner portion has a seat with a groove. A disconnector has a hammer hook coupled to the trigger. A trigger mounting pin couples the trigger to the firearm. A trigger disconnector spring couples the trigger and the disconnector. A hammer having an upper striking portion with a disconnector hook receptacle. A hammer mounting pin couples the hammer to the firearm. A hammer spring is coupled to the hammer and hammer mounting pin. A cam body subassembly comprises a cam body housing, a cam and a cam mounting pin. The cam body subassembly is coupled to the firearm. A safety selector is coupled to the firearm. A trigger extender is mated with the upward trigger groove.

These together with other objects of the invention, along with the various features of novelty which characterize the invention, are pointed out with particularity in the claims annexed to and forming a part of this disclosure. For a better understanding of the invention, its operating advantages and the specific objects attained by its uses, reference should be had to the accompanying drawings and descriptive matter in which there is illustrated preferred embodiments of the invention.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention will be better understood and objects other than those set forth above will become apparent when consideration is given to the following detailed description thereof. Such description makes reference to the annexed drawings wherein:

FIG. **1** is a cross sectional elevation of the invention depicting the configuration of the firearm mechanism at the time of discharge of the firearm.

FIG. **2** is a cross sectional elevation of the invention depicting the configuration of the firearm mechanism at the time of the firearm bolt engaging the cam and pushing the trigger forward.

FIG. **3** is a cross sectional elevation of the invention depicting the configuration of the firearm at the time the firearm bolt is in a nearly forward, nearly closed position.

FIG. **4** is front sectional elevation of the invention along line **4**-**4** of FIG. **3**.

FIG. **5** is an exploded view of the receiver of a firearm, demonstrating the relationships of the various components of the invention with the receiver.

The same reference numerals refer to the same parts throughout the various Figures.

DESCRIPTION OF THE PREFERRED EMBODIMENT

With reference now to the drawings, and in particular to FIG. **1** thereof, the preferred embodiment of the new and improved trigger forward displacement system and method embodying the principles and concepts of the present invention and generally designated by the reference numeral **10** will be described.

The present invention, the trigger forward displacement system and method **10** is comprised of a plurality of components. Such components in their broadest context include a semi-automatic firearm, a trigger, a disconnector, a trigger

5

mounting pin, a trigger disconnector spring, a hammer, a hammer mounting pin, a hammer spring, a cam body assembly, a safety selector, and a trigger extender. Such components are individually configured and correlated with respect to each other so as to attain the desired objective.

First provided is a semi-automatic firearm. The semi-automatic firearm has a forward end **12** and a rearward end **14**. The semi-automatic firearm is comprised of a receiver **16**. The receiver has a safety selector aperture. The semi-automatic firearm has a barrel and a bolt. The semi-automatic firearm further has a reciprocating loading mechanism **20** and a magazine.

A trigger **22** is provided. The trigger is fabricated of rigid material. The trigger has an outer finger portion **24** and an inner portion **26**. The inner portion has a forward end and a rearward end. The finger portion has a generally forwardly displaced and downwardly projecting arcuate configuration. The rearward inner portion has a seat **28**. The seat comprises a generally rectangularly configured rearward portion. The seat has two upwardly projecting side walls and a rear wall. The walls form an upwardly displaced groove **30**. The groove has a first width. The inner portion of the trigger also has upwardly facing spring recess **32**. The recesses are forward of the groove. The forwardmost end of the inner portion has a beveled sear portion **34**. A mounting pin hole **36** is provided through the inner portion of the trigger. In this manner the trigger is allowed to rotate about the pin hole.

A disconnector **38** is provided next. The disconnector is fabricated of rigid material. The disconnector has a lower attachment portion and an upper portion. A mounting pin hole **40** is provided through the lower attachment portion. The lower attachment portion has a downwardly disposed spring recess **42**. The upper portion has a generally forwardly oriented hooked configuration with a hammer hook **44**.

Provided next is a trigger mounting pin **46**. The trigger mounting pin couples the disconnector and the trigger to the firearm receiver. In this manner the pivotal motion of the trigger and the disconnector is allowed about the trigger pin.

A trigger disconnector spring **48** is provided. The trigger disconnector spring couples the trigger and the disconnector. The spring is nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

Next, a hammer is provided. The hammer has a pair of parallel side walls. A thickness is provided between the side-walls. The hammer has a lower attachment portion and an upper striking portion. A hammer mounting pin aperture **50** is provided through the attachment portion from side to side. The lower portion has a trigger sear **52** catch. The trigger sear engages the trigger and the hammer. The upper portion has a rearwardly displaced disconnector hook receptacle **54** a striking surface **56**. The striking surface is forwardly disposed.

A hammer mounting pin **58** is provided. The hammer mounting pin is sized to couple the hammer and the receiver. In this manner the hammer is allowed to pivot about the **55** hammer mounting pin.

Provided next is a hammer spring **60**. The hammer spring is coupled to the hammer mounting pin. The hammer spring pushes the hammer in a forwardly direction.

Also provided is a cam body subassembly **62**. The cam body subassembly comprises a cam body housing **64**, a cam **66**, and a cam mounting pin **68**. The cam body has a generally rectangular configuration. The cam body has two side surfaces, a rear surface, and a forward surface. The cam body further has top surface and a bottom surface. The body has a forward portion and a rearward portion. A side to side recess **70** is provided through the rearward portion. In this manner

6

the receiver of the firearm is accommodated. The forward portion has a pair of forwardly projecting cam holders **72**. Through each cam holder is a cam holding pin aperture **74**. The cam has a lower portion **76**. The lower portion has a lower surface. The cam has an upper portion **78**, a front portion, and a rear portion. The lower portion has a generally rectilinear configuration. The upper portion has an upwardly projecting front and rear beveled configuration. In this manner a point is formed. A cam pin aperture **80** is provided in the cam. The cam pin aperture aligns with and mates with the cam holder pin apertures. The cam mounting pin is sized to be received by and mated with the cam holder pin apertures. The cam mounting pin allows the pivotal rotation of the cam about the mounting pin.

Further provided is a safety selector **82**. The safety selector has an outer portion **84** and an inner portion **86**. The outer portion comprises a downwardly displaced lever. The inner portion has a generally solid tubular configuration. The inner portion has a plurality of flat recessed surfaces **88**. The selector is mated with and received by the receiver safety aperture. In this manner the selector is rotatable when in place.

Last provided is a trigger extender **90**. The trigger extender is in a generally rectilinear configuration. The trigger extender has a stepped upper surface **92** and a lower surface. The trigger extender has two parallel side surfaces and parallel front and rear surfaces. The lower surface has a first external side. The first external side has a side to side first width to be received by and mated with the upward trigger groove. The stepped upper surface is flattened and mated with the lower surface of the lower portion of the cam. Mating with the cam is allowed in a rearward position and a disconnected with the cam in the forward position.

The present invention also comprises a method for automatically actively and positively moving a trigger from a rearward firing position into a forward ready position during the loading cycle of a semi-automatic firearm.

The first step of the method is providing a semi-automatic firearm having a forward end and a rearward end comprising a receiver having a safety selector aperture and a barrel and a bolt and a reciprocating loading mechanism and a magazine.

The next step is providing a trigger fabricated of rigid material having an outer finger portion and an inner portion with the inner portion having a forward end and a rearward end, the finger portion having a generally forwardly displaced and downwardly projecting arcuate configuration, with the rearward inner portion having a seat, the seat comprising a generally rectangularly configured rearward portion with two upwardly projecting side walls and a rear wall, the walls forming an upwardly displaced groove having a first width, the inner portion of the trigger also having upwardly facing spring recess forward of the groove, the forwardmost end of the inner portion having a beveled sear portion, with the inner portion of the trigger having a mounting pin hole there through for allowing the trigger to rotate about the pin hole.

The next step is providing a disconnector fabricated of rigid material having a lower attachment portion and an upper portion, the lower attachment portion having a mounting pin hole there through, the lower attachment portion having a downwardly disposed spring recess, with the upper portion having a generally forwardly oriented hooked configuration with a hammer hook.

The next step is providing a trigger mounting pin for coupling the disconnector and the trigger to the firearm receiver to allow the pivotal motion of the trigger and the disconnector about the trigger pin.

The next step is providing a trigger disconnector spring for coupling the trigger and the disconnector, the spring being

7

nested in the trigger spring recess and the disconnector spring recess and biasing the hammer hook of the disconnector in a forward position.

The next step is providing a hammer having a pair of parallel side walls and a thickness there between, the hammer having a lower attachment portion and an upper striking portion with the attachment portion having a hammer mounting pin aperture there through from side to side, with the lower portion having a trigger sear catch to engage the trigger and the hammer, the upper portion having a rearwardly displaced disconnector hook receptacle and a forwardly disposed striking surface.

The next step is providing a hammer mounting pin sized to couple the hammer and the receiver to allow the hammer to be pivot able about the hammer mounting pin;

The next is providing a hammer spring coupled to the hammer mounting pin, the hammer spring pushing the hammer in a forwardly direction.

The next step is providing a cam body subassembly comprising a cam body housing and a cam and a cam mounting pin, the cam body having a generally rectangular configuration with two side surfaces and a rear surface and a forward surface and a top surface and a bottom surface, the body having a forward portion and a rearward portion, the rearward portion having a side to side recess there through sized to accommodate the receiver of the firearm, the forward portion having a pair of forwardly projecting cam holders, with each cam holder having a cam holder pin aperture there through, the cam having a lower portion with a lower surface and an upper portion and a front portion and a rear portion, the lower portion having a generally rectilinear configuration and the upper portion having an upwardly projecting front and rear beveled configuration forming a point, the cam having a cam pin aperture there through to align with and mate with the cam holder pin apertures, the cam mounting pin sized to be received by and mated with the cam holder pin apertures, with the cam mounting pin allowing the pivotal rotation of the cam about the mounting pin.

The next step is providing a safety selector having an outer portion and an inner portion, the outer portion comprising a downwardly displaced lever with the inner portion having a generally solid tubular configuration with a plurality of flat recessed surfaces, the selector being mated with and received by the receiver safety aperture allowing the selector to be rotatable when in place.

The penultimate step is providing a trigger extender having a generally rectilinear configuration with an upper surface and a lower surface and two parallel side surfaces and parallel front and rear surfaces with the lower surface having a first external side to side first width to be received by and mated with the upward trigger groove, the upper surface being flattened and mated with the lower surface of the lower portion of the cam.

The final step is automatically actively and positively moving the trigger of a semi-automatic firearm from the rearward fire position to the reset, unpulled and ready to fire position by the reciprocating function of the firearm mechanism, such that, once reset, the operator's finger pressure is prevented from being able to move the trigger in the rearward direction toward the fire position until the firearm reciprocating mechanism has reached an approximately closed, ready to fire position, with such means also preventing the binding or displacement of the reciprocating loading mechanism by a pressure placed on the trigger.

What is claimed as the invention is an accelerating assembly to effectively increase the cyclic rate at which the operator may actuate the trigger and discharge a semi-automatic fire-

8

arm. The firearm is a typical semi-automatic firearm containing a reciprocating member which is used to load a round of live ammunition into the chamber, to position the components of the action to be ready to effect the discharge of the loaded round in response to a pull of the trigger by the operator, and to unload the spent cartridge from the chamber of the firearm after firing. The accelerating mechanism incorporates a plurality of parts designed to allow the reciprocating member of the firearm, said reciprocating member including a bolt, bolt carrier, slide or part of another name depending upon the firearm involved.

On the rearward travel of the reciprocating member the mechanism resets the trigger to the forward, ready-to-fire position. The trigger reset may be against the rearward pressure on the trigger applied by the operator's finger. The trigger is positively held in the forward, ready-to-fire position until such time as the reciprocating member has reversed direction and has reached the nearly-fully-forward position where it is safe to allow discharge of the firearm.

When the nearly-fully-forward, or nearly closed, position is reached, the accelerating mechanism disengages and allows the operator to again pull the trigger rearward. This cycle will be repeated the firearm to be discharged at a accelerated rate. The semi-automatic status of the firearm is retained as the firearm only discharges one round of ammunition for each pull of the trigger.

The present invention relates generally to firearms. Specifically, the present invention relates to methods and structural arrangements by which to accelerate the cyclic firing rate of a semi-automatic firearm. The method utilized by this invention is the resetting of the trigger to the forward ready-to-fire position by use of the reciprocating mechanism of the firearm. The mechanism moves the trigger from the fire, rearward, position into the ready-to-fire, forward, position. The trigger is held in the ready-to-fire position until the firearm has completed the discharge, extraction, reloading sequence. Once the sequence is complete and the bolt is in the nearly-fully-forward, or nearly closed, position, and then mechanism disengages the trigger thereby allowing the operator to pull the trigger and repeat the sequence. As the trigger is actively moving forward and rearward for each shot fired, and as the shooter must in fact pull the trigger each time, the semi-automatic status of the firearm is preserved.

Fully automatic firearms, commonly referred to as "machine guns" are designed such that they will continue to fire automatically so long as the trigger of the firearm is held in the rearward position. Legally any firearm that discharges more than one shot by a single function of the trigger is a machine gun. While machine guns are legal for civilian ownership in the United States, further manufacture of machine guns for civilian sale was outlawed in May of 1986 thereby fixing the quantity of machine guns available to the civilian market. Due to this "fixed supply" in the face of increasing demand, machine gun prices have continued to rise over time, currently reaching levels that are out of reach for many consumers. Additionally machine guns are regulated by the National Firearms Act which imposes transfer taxes, registration requirements, and other administrative burdens on owners of machine guns. Given this combination of economics and regulatory requirements, many inventors have devised ways to increase the cyclic rate of a semi-automatic firearm without causing the firearm to become a machine gun by violating the "one round per function of the trigger" rule.

One prior known attempt to enhance the cyclic firing rate of a semi-automatic firearm was commonly known as the "Hell Fire System". The Hell Fire System, or HFS, constitutes a spring biased paddle that engages the rear of the trigger and

**9**

continually urges it in a forward direction. To operate the HFS, on balances the firearm by supporting it with one hand grasping the fore-end of the stock and with the hand having the trigger-finger positioned so the trigger finger is within the trigger guard of the firearm but that hand is otherwise not touching the firearm. The hand with the trigger finger is held in a fixed position. The operator then uses the hand that grasps the fore-end of the firearm to pull the firearm away from his body causing the trigger to contact that approximately statically held trigger finger and with continued pulling by the first hand, the trigger finger is made to pull the trigger. When the firearm discharges and recoils, the entire firearm moves rearward which also moves the trigger rearwardly away from the approximately statically held trigger finger. Throughout this sequence the operator is continually pulling the firearm away from him with the hand on the fore-end but his attempt to do so is briefly interrupted by the recoil impulse.

As the recoil impulse subsides the operator's continued pulling will once again move the firearm away from the body causing the trigger to impact the trigger finger and the process repeats. Accuracy and reliability suffered greatly as the firearm could not be shouldered and the technique required practice to develop.

Another known method is the Akins patent (U.S. Pat. No. 6,101,918) referenced by this patent which takes the HFS principle and renders it in a mechanically controlled form that is accurate and reliable. By allowing the entire firearm frame, action and barrel to move within the stock of the firearm, Akins permits the firearm to be shouldered, the trigger finger to be absolutely statically held, and still employ the general HFS principle of allowing the recoil to move the trigger away from the trigger finger. While accurate and reliable, the Akins invention is best suited to firearms in which the receiver of the firearm is coupled to a unitary grip and buttstock so that the shooter's trigger-finger hand can be held stationary relative to the buttstock while the receiver moves within the grip-stock unit.

Many military style arms have a separate pistol grip and buttstock in their military configuration. In order to use the Akins invention these firearms would have to be fitted with a unitary grip-stock combination such as a thumb-hole stock. Therefore, many firearms such as the AR15, L1A1, AK47, etc. would not be able to employ the Akins invention in their original separate-pistol-grip configuration.

Additionally it appears that the Akins invention requires considerable modification to the host firearm in order to permit the receiver to move within the stock and provide a means to urge the receiver forward again after the recoil impulse has subsided.

Lastly, the Inskip patent, (U.S. Pat. No. 4,023,465) also referenced by this patent, appears intended to regulate the rate of fire of a machine gun by allowing the operator to control the rate of fire of the firearm by the pulling pressure on the trigger. The exemplary embodiment of Inskip's invention uses the cycling bolt carrier of an AK47 to move the trigger of the firearm to the forward ready-to-fire position, and then locks the trigger in that position until the bolt carrier returns to battery at which time the trigger is unlocked and the operator again allowed to pull it. According to Inskip's patent disclosure, if the operator pulls the trigger lightly the cycle will be slowed and if the trigger is pulled firmly the cyclic rate will increase. The difference between the present invention and the Inskip invention is that the Inskip mechanism used to allow the bolt carrier to force the trigger forward allows the operator's trigger finger pressure to be transmitted vertically to the bolt carrier during the entire latter portion of the bolt carrier's cycle. Inskip allows the operator's trigger finger

**10**

pressure to cam the bolt carrier upward causing friction between the bolt carrier and the adjacent surfaces of the receiver of the firearm. The period when the carrier approaches, then reaches its fully rearward point and reverses directions is a vulnerable point with regard to stoppages as the bolt carrier is in a lower kinetic energy state and more easily halted. Since the transmission of the trigger-finger force persists during this period the resulting friction and displacement is sufficient to cause the bolt carrier to bind and cease travel in some firearms causing a highly undesirable stoppage. The present invention eliminates this problem as follows.

It is, therefore, a primary object of the invention to provide an improved method and apparatus by which the cyclic rate of a semi-automatic firearm can be accelerated by using the reciprocating member of a semi-automatic firearm to reset the trigger to the ready-to-fire position. The mechanism described in this application allows the operator's trigger finger pressure to be overcome during a relatively high energy portion of the reciprocating member's travel. After resetting the trigger, the trigger finger pressure is borne by the accelerating mechanism and is unable to continue to transmit force to the reciprocating member. The trigger is held in the ready-to-fire position until the loading cycle is completed and the gun is safe to fire.

It is another object of the present invention to provide an improved method and apparatus, as above, that will increase the cyclic firing rate without requiring the receiver of the firearm to be modified, however, a version requiring modification of the receiver is also described.

It is another object of the present invention to provide an improved method and apparatus, as above, that will increase the cyclic firing rate without causing the firearm to fall into the legal definition of a machine gun.

After the trigger has been pulled and the hammer has fallen, impacting the firing pin and igniting a round of ammunition, the bolt is driven rearward by the firing action and in so moving will first pivot the hammer to the cocked rearward position whereupon it will engage the disconnector. As the bolt continues its rearward progress, it will secondly contact the cam pivoting it rearward until such time as the bottom surface of the forward portion of the bolt is allowed to pass over the cam freely. In rotating to the rear (more than 45 degrees) the bottom surface of the cam has pressed downward on the trigger-extension forcing the rear of the trigger down thereby moving forward the surface of the trigger that the operator's finger engages. In resetting the trigger the disconnector ceases to engage the hammer. The hammer then continues to be held to the rear by the forward engagement surface of the trigger engaging the notch in the sear notch at the bottom of the hammer. The nature of the cam and its action is such that the trigger is held firmly down/forward potentially against the finger pressure of the operator, but the force of the operator's finger is not transmitted to the bolt as an upward displacing force. Such upward displacing force would bind the bolt and abnormally terminate the firing cycle. Ultimately the bolt reaches the mechanical limit of its rearward motion (limited by the buffer spring which is not illustrated) and the bolt begins moving forward by force of said spring. As the bolt nears the end of its forward movement the face of the trailing bottom surface of the bolt (which is lower with regard to the cam than the bottom surface of the forward portion of the bolt) contacts a now vertical surface of the cam rotating the cam forward 8 or more degrees (the impact may rotate the cam further than is mechanically imperative). After the forward rotation of the cam, if finger pressure is applied to the surface of the trigger that is engaged by the operator's finger, the resulting upward force of the trigger-extension against the

US 7,398,723 B1

11

flat surface of the cam currently at an angle to the trigger-extension will force the cam to finish rotating forward to it's original position. The applied finger pressure will then be permitted to fully pivot the trigger to the point that it releases the hammer and begin the firing sequence again.

The disclosed invention may also be crafted by eliminating the cam body and instead fashioning the cam and firearm receiver in such a way as to allow the cam to be pinned in place directly to the receiver.

It is intended that the effect of the disclosed invention be able to be optionally selected or deselected by operating the selector-cam and by configuring the trigger extension to be able to move forward and rearward within/upon the rear of the trigger by means of a spring bias that competes with engagement surfaces machined into the selector-cam. Moving the trigger-extension forward or rearward would allow or prevent the cam from contacting the top/bearing surface of the trigger-extension by having the top/bearing surface of the trigger-extension crafted so that it has a lower and higher part, and such that when the lower part is beneath the cam the cam does not make contact with the top/bearing surface of the trigger-extension as the cam moves through its range of motion, thereby allowing or preventing the cam from resetting the trigger.

The invention can be effected without the provision of a selector whereupon the effect of the invention will be continually present unless the apparatus is removed from the firearm.

As to the manner of usage and operation of the present invention, the same should be apparent from the above

12

description. Accordingly, no further discussion relating to the manner of usage and operation will be provided.

With respect to the above description then, it is to be realized that the optimum dimensional relationships for the parts of the invention, to include variations in size, materials, shape, form, function and manner of operation, assembly and use, are deemed readily apparent and obvious to one skilled in the art, and all equivalent relationships to those illustrated in the drawings and described in the specification are intended to be encompassed by the present invention.

Therefore, the foregoing is considered as illustrative only of the principles of the invention. Further, since numerous modifications and changes will readily occur to those skilled in the art, it is not desired to limit the invention to the exact construction and operation shown and described, and accordingly, all suitable modifications and equivalents may be resorted to, falling within the scope of the invention.

What is claimed as being new and desired to be protected by Letters Patent of the United States is as follows:

1. A method of accelerating the firing cycle of a semi-automatic firearm comprising the steps of:

depressing a firearm trigger with a finger to discharge the firearm;

activating a reciprocating mechanism within the firearm that causes a cam, in a single rotational motion of the cam, to simultaneously push the trigger forward into a ready to fire position and hold the trigger forward in the ready to fire position until the reciprocating mechanism has reached an approximately closed, ready to fire position.

\* \* \* \* \*