Joyce A. Hemmer, ISB #7202
**ELAM & BURKE, P.A.**
251 East Front Street, Suite 300
Post Office Box 1539
Boise, Idaho 83701
Telephone: (208) 343-5454
Facsimile: (208) 384-5844
jah@elamburke.com

John M. Skeriotis, Ohio Bar #0069263 (Admitted *pro hac vice*)
**EMERSON, THOMSON & BENNETT, LLC**
1914 Akron Peninsula Road
Akron, Ohio 44313
Telephone: (330) 434-9999
Facsimile: (330) 434-8888
jms@etblaw.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ABC IP, LLC et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>DNT LLC d/b/a DEEZ NUTZ TACTICAL et al.,<br><br>*Defendants*. | Case No. 4:25-cv-00298-AKB<br><br>**ANSWER TO THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**Demand For Jury Trial** |

DNT LLC d/b/a Deez Nutz Tactical ("DNT") and Zack Morrow (collectively, "Defendants") respond to the Third Amended Complaint [Dkt. 25, "Complaint"] of ABC IP, LLC ("ABC") and Rare Breed Triggers, Inc. (collectively, "Plaintiffs") as follows. For convenience, this Answer uses the headings used in the Complaint; however doing so is not an admission that those headings are correct or appropriate. Every allegation not specifically admitted is denied.

PARTIES

1. Defendants lack knowledge or information sufficient to form a belief regarding the

ANSWER TO THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT [DKT. 25] - 1

allegations of ¶1 of the Complaint.

2. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶2 of the Complaint.

3. Defendants admit the allegations of ¶3 of the Complaint.

4. Defendants admit the allegations of ¶4 of the Complaint.

5. Defendants admit the allegations of ¶5 of the Complaint.

## JURISDICTION AND VENUE

6. With respect to ¶6 of the Complaint, Defendants admit that Plaintiffs brought an action for patent infringement but deny that the action has merit.

7. Defendants admit the allegations of ¶7 of the Complaint.

8. Defendants admit the allegations of ¶8 of the Complaint.

9. Defendants admit the allegations of ¶9 of the Complaint.

## BACKGROUND

10. With respect to ¶10 of the Complaint, Defendants admit that Plaintiffs' lawsuit asserts contributory and induced infringement of U.S. Patent No. 12,038,247 ("the '247 Patent") and U.S. Patent No. 7,398,723 ("the 723 Patent") but deny that the lawsuit has merit. Exhibits A and B to the Complaint are not certified copies of the '247 and '723 Patents so Defendants lack knowledge and information sufficient to form a belief regarding the remaining allegations.

11. With respect to ¶11 of the Complaint, Defendants admit that the '247 Patent issued on July 16, 2024, and that it purports to claim the benefit of a provisional application that was filed on September 8, 2022, but deny that the patent is entitled to such priority date or that the patent was lawfully and properly issued due to its invalidity and/or unenforceability.

12. With respect to ¶12 of the Complaint, Defendants admit that the '723 Patent issued

on July 15, 2008, and that it was filed on April 25, 2003 but deny that the patent was lawfully and properly issued due to its invalidity and/or unenforceability.

13. Upon information and belief, Defendant denies the allegations of ¶13 of the Complaint and asserts that Mr. Blakley was reminded by the United States Patent and Trademark Office of the maintenance fee payment and, as such should have been fully aware of the maintenance fee.

14. With respect to ¶14 of the Complaint, Defendants admit that a purported assignment of the '247 Patent's application to ABC has been recorded at the U.S. Patent and Trademark Office but lack knowledge and information sufficient to form a belief regarding the '723 Patent (as there is no assignment recorded in the prosecution history of the '723 Patent) and the remaining allegations.

15. Defendant admits the allegations of ¶15 of the Complaint.

16. Defendants lack knowledge or information sufficient to form a belief regarding the allegations of ¶16 of the Complaint.

17. Defendants deny the allegations of ¶17 of the Complaint.

18. With respect to ¶18 of the Complaint, Defendants admit that ABC's counsel sent a cease-and-desist letter to Defendants but deny that the letter had merit, as explained in their May 8, 2025 reply letter, attached herein as Exhibit 1.

19. Defendants deny the allegations of ¶19 of the Complaint.

The Invention

20. With respect to ¶20 of the Complaint, Defendants admit that the '723 Patent discloses a semiautomatic trigger mechanism but denies the remaining allegations of ¶20 of the Complaint.

ANSWER TO THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT [DKT. 25] - 3

21.     With respect to ¶21 of the Complaint, Defendants admit that the '247 Patent discloses a device for accelerating the firing sequence of a semiautomatic firearm, where the device can be selected to operate in a standard semiautomatic mode or a forced-reset semiautomatic mode. The disclosed device uses a cam (which is a component that the '247 Patent discloses as separate from the selector that selects the mode of operation) that is rotated by movement of the bolt carrier to force the trigger member to reset. The '247 Patent discloses that the device can be used in AR-pattern firearms. However, Defendants deny that the '247 Patent's device is novel and the remaining allegations.

22.     Defendants admit the allegations of ¶22 of the Complaint.

23.     With respect to ¶23 of the Complaint, Defendants admit that the disconnector (in a standard AR-pattern firearm) holds the hammer in a cocked position until the trigger sear can engage the hammer. In a standard semiautomatic AR-pattern firearm (i.e., with no modified or customized components), this prevents the firearm from either firing multiple rounds on a single pull of the trigger or from allowing the hammer to follow the bolt carrier as it returns to battery.

24.     With respect to ¶24 of the Complaint, Defendants admit that at least some forced-reset trigger designs utilize the cycling of the bolt carrier to cause the trigger member to be forced to the reset position (even where the user is maintaining and has not released pressure on the trigger).

25.     Defendants deny the allegations of ¶25 of the Complaint.

26.     Defendants deny the allegations of ¶26 of the Complaint.

27.     With respect to ¶27 of the Complaint, Defendants admit that the '247 Patent discloses a device with two modes of operation (standard semiautomatic and forced-reset automatic) but deny that the Patent discloses an improvement in such technologies, since such

technologies were disclosed long before the '247 Patent.

28.     With respect to ¶28 of the Complaint, Defendants admit that the '247 Patent discloses a device that can operate in forced-reset mode, where a cam (which is a separate component from the mode selector) is rotated by movement of the bolt carrier to force the trigger member to reset.

The [Allegedly] Infringing Devices

29.     With respect to ¶29 of the Complaint, Defendants admit that DNT is offering for sale and selling a Super Safety kit and components therefor.  Defendants deny that the Super Safety embodies the technology claimed in the '247 Patent and the remaining allegations.

30.     Defendants deny the allegations of ¶30 of the Complaint.

31.     With respect to ¶31 of the Complaint, Defendants admit that DNT sells and offers for sale the Super Safety kits and associated components via its website (https://deeznutztactical.com) and Facebook page but deny the remaining allegations (including that the Super Safety infringes the '247 Patent).

32.     With respect to ¶32 of the Complaint, Defendants admit that DNT sells a Super Safety cam and lever (that replace a standard AR-pattern safety selector) and a trigger customized to work with the Super Safety.  Defendants deny the remaining allegations.

33.     With respect to ¶33 of the Complaint, Defendants admit that DNT sells Super Safety cam levers and triggers customized to work with the Super Safety, as explained in ¶23.

34.     With respect to ¶34 of the Complaint, Defendants admit that DNT sells "DB9 Super Safety Curved Kits" and "DB9 Super Safety Flat Kits."  Defendants deny the remaining allegations.

35.     With respect to ¶35 of the Complaint, Defendants admit that DNT sells "DB9

Titanium Trip Bars" but deny the remaining allegations.

36. With respect to ¶36 of the Complaint, Defendants admit that DNT sells "Centering Blocks" but deny the remaining allegations.

37. With respect to ¶37 of the Complaint, Defendants admit that DNT sells "Go/No Go Gauges" and "Jigs" but deny the remaining allegations.

38. Defendants admit that ¶38 of the Complaint quotes 35 U.S.C. §271(c).

39. With respect to ¶39 of the Complaint, it is unclear which exact "parts" are referenced. Defendants further deny any contributory infringement.

40. With respect to ¶40 of the Complaint, it is unclear which exact "parts" are referenced. Defendants further deny any infringement (contributory or otherwise).

41. Defendants admit that ¶41 of the Complaint quotes 35 U.S.C. §271(b).

42. Defendants deny the allegations of ¶42 of the Complaint.

43. With respect to ¶43 of the Complaint, the "Infringing Devices" are defined as the Super Safety kits sold by DNT; but the Super Safety kit cannot operate by itself in any mode. Furthermore, the Super Safety kit includes no separate safety selector. Therefore Defendants deny these allegations.

44. With respect to ¶44 of the Complaint, it is unclear what the referenced "user" is using and what "cam" is referenced, so Defendants lack knowledge or information sufficient to form a belief regarding these allegations.

45. Defendants admit the allegations of ¶45 of the Complaint.

46. Defendants deny the allegations of ¶46 of the Complaint.

47. Defendants deny the allegations of ¶47 of the Complaint.

48. Defendants deny the allegations of ¶48 of the Complaint.

### COUNT I – INDIRECT INFRINGEMENT OF THE '247 PATENT

49. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

50. Defendants deny the allegations of ¶50 of the Complaint.

51. Defendants deny the allegations of ¶51 of the Complaint.

52. Defendants deny the allegations of ¶52 of the Complaint.

53. Defendants deny the allegations of ¶53 of the Complaint.

54. Defendants deny the allegations of ¶54 of the Complaint.

55. Defendants deny the allegations of ¶55 of the Complaint.

56. Defendants deny the allegations of ¶56 of the Complaint.

57. Defendants deny the allegations of ¶57 of the Complaint.

58. Defendants deny the allegations of ¶58 of the Complaint.

### COUNT II – DIRECT INFRINGEMENT OF THE '247 PATENT

59. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

60. Defendants deny the allegations of ¶60 of the Complaint.

61. With respect to ¶61 of the Complaint, Defendants admit that ¶42 of the Complaint includes a chart that purports to compare claim 15 of the '247 Patent, but Defendants deny the truth of those allegations.

62. With respect to ¶62 of the Complaint, Defendants admit that DNT sells "D2 Complete FCC Curved SS Kits" and "D2 Complete FCC Flat Super Safety Kits," as stated in ¶36 above, but deny the remaining allegations.

63. Defendants deny the allegations of ¶63 of the Complaint.

64. Defendants deny the allegations of ¶64 of the Complaint.

65. Defendants deny the allegations of ¶65 of the Complaint.

66. Defendants deny the allegations of ¶66 of the Complaint.

### COUNT III – INDIRECT INFRINGEMENT OF THE '723 PATENT

67. Defendants incorporate by reference the preceding paragraphs as if fully set forth herein.

68. Defendants deny the allegations of ¶68 of the Complaint.

69. Defendants deny the allegations of ¶69 of the Complaint.

70. Defendants deny the allegations of ¶70 of the Complaint.

71. Defendants deny the allegations of ¶71 of the Complaint.

72. Defendants deny the allegations of ¶72 of the Complaint.

73. Defendants deny the allegations of ¶73 of the Complaint.

74. Defendants deny the allegations of ¶74 of the Complaint.

75. Defendants deny the allegations of ¶75 of the Complaint.

76. Defendants deny the allegations of ¶76 of the Complaint.

77. Defendants deny the allegations of ¶77 of the Complaint.

### PRAYER FOR RELIEF

Defendants deny that Plaintiff is entitled to the relief requested in the Complaint.

### **AFFIRMATIVE DEFENSES**

1. The Complaint fails to state a claim upon which relief can be granted.

2. Count III fails to assert any knowledge on behalf of the Defendants which is an essential element to proving indirect infringement.

3. Plaintiff's alleged '723 Patent should not have been granted reinstatement for

failure to pay the maintenance fee due to inequitable conduct on behalf of Mr. Blakely.

4. Defendants have not infringed and do not infringe any valid and enforceable claim of the '247 Patent or the '723 Patent.

5. The asserted claims of the '247 Patent and the '723 Patent do not meet the statutory requirements of the Patent Act, 35 U.S.C. §101 *et seq*., and thus are invalid.

6. Plaintiffs have failed to plead and prove compliance with 35 U.S.C. §287, thus limiting any damages that they may recover.

7. Plaintiffs' claims fail in whole or in part under principles of equity, including, without limitation, because of Plaintiffs' unclean hands and acts done in bad faith.

8. Plaintiffs' claims are barred in whole or in part by the doctrine of estoppel.

9. Plaintiffs are not entitled to injunctive relief as they, at minimum, have not suffered any irreparable injury.

10. Defendants' conduct was not the proximate cause of Plaintiffs' alleged damages.

11. Pursuant to Federal Rule of Civil Procedure 11, at the time of the filing of this Answer, all possible affirmative defenses may not have been alleged inasmuch as sufficient facts and other relevant information may not have been available after reasonable inquiry, and therefore Defendants reserve their right to amend this Answer to allege additional affirmative defenses if subsequent investigation warrants the same.

## **REQUEST FOR ATTORNEY FEES**

Defendants have been required to retain the services of legal counsel in order to defend against Plaintiffs' Complaint and are entitled to reasonable attorney fees and costs incurred in the defense of this matter pursuant to 35 U.S.C. § 285, Rule 54 of the Federal Rules of Civil Procedure, and any other applicable statutes and/or common law provisions.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Defendants hereby demand a trial by jury of no fewer than twelve persons on all issues so triable.

## PRAYER

WHEREFORE, Defendants pray for judgment as follows:

1. That the Complaint be dismissed with prejudice and that Plaintiffs take nothing thereby;

2. That Defendants be awarded their attorney fees, costs, and expenses necessarily incurred in defending itself in this action; and

3. For such other and further relief as this Court may deem just and proper.

DATED this 31st day of October, 2025.

/s/John M. Skeriotis
John M. Skeriotis (Admitted *pro hac vice*)
jms@etblaw.com
**EMERSON, THOMSON & BENNETT, LLC**
1914 Akron-Peninsula Road
Akron, Ohio 44313

/s/Joyce A. Hemmer
Joyce A. Hemmer
jah@elamburke.com
**ELAM & BURKE, P.A.**
251 E. Front Street, Suite 300
Boise, ID  83702

*Attorneys for Defendants*

4921-0319-8582, v. 1

ANSWER TO THIRD AMENDED COMPLAINT FOR PATENT INFRINGEMENT [DKT. 25] - 10

**Exhibit 1**



INTELLE©TUAL PROPE®TY LAW
Patent, Trademark, Copyright and Internet Law

1914 Akron-Peninsula Rd., Akron, OH 44313 ■ P: 330.434.9999 ■ F: 330.434.8888 ■ www.etblaw.com

May 8, 2025

Mr. Glenn D. Bellamy
Wood Herron & Evans LLP
600 Vine Street, Suite 2800                                    **VIA E-MAIL ONLY**
Cincinnati, OH 45202                                           gbellamy@whe-law.com

    Re:    ABC IP, LLC (Patent Owner); Rare Breed Triggers, LLC (*Alleged Exclusive Licensee*)
             U.S. Patent No. 12,038,247
             Cease-and-Desist Letters Regarding Super Safety

Dear Mr. Bellamy:

    Our firm represents several entities to which you sent cease-and-desist letters on behalf of ABC IP, LLC ("ABC") regarding its U.S. Patent 12,038,247 ("Patent"). These entities include: 80Mills LLC d/b/a Tactical Titan Supply; DNT LLC d/b/a Deez Nutz Tactical; Z3 Productions, LLC d/b/a Z3 Pro; Harrison Gunworks LLC; Grey Market Research & Development LLC; and Stark80 LLC.

    As a preliminary observation, none of your letters accused any of these entities of direct infringement of the Patent under 35 U.S.C. §271(a). Instead, the only accusations are of indirect infringement under §§ 271(b)-(c). Nor did any of the letters identify any instances of underlying direct infringement that is a predicate for indirect infringement. *See, e.g., Niazi Licensing Corp. v. St. Jude Med. S.C., Inc.*, 30 F.4th 1339, 1351 (Fed. Cir. 2022); *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1333 (Fed. Cir. 2012).

    ABC accuses various accessory components of contributing to the infringement of "at least claims 15 and 20," though no other claim is identified apart from these two. ABC also asserts that the sale of such components induces infringement of the Patent. Our clients take such accusations very seriously. We have reviewed the letters, the Patent, and the accused products, and have concluded that ABC's accusations are meritless.

    In reviewing the Patent's prosecution history, we note that asserted claims 15 and 20 were not present in the as-filed Patent application but were added by a preliminary amendment on April 4, 2024 – almost a year after the application was filed and several months after Hoffman Tactical LLC published information regarding the Super Safety on its website. The scope of the added claims (especially, the "cam" limitation and the "whereupon" limitations) differs markedly from the prior (as-filed) claims and is not supported by the as-filed specification and drawings. It is obvious that Mr. Blakley did not invent the Super Safety but an entirely different design, and the addition of the new claims through the preliminary amendment was just an attempt to stretch the claim scope to encompass others' designs. *See Quake v. Lo*, 928 F.3d 1365, 1373 (Fed. Cir. 2019). Our clients reserve their arguments regarding the Patent's invalidity.

Mr. Glenn D. Bellamy
May 8, 2025
Page 2 of 3

  While ABC accuses various accessory components (singly or in combination), the core of all of its accusations is the Super Safety (which includes a 3-position (dual mode) cam, a lever, and a detent). Because of the centrality of the Super Safety, this response focuses on the Super Safety itself, rather than the multiple kit variants or sub-components offered by the various entities.

  By asserting only indirect infringement, ABC implicitly concedes that the Super Safety is missing at least one claim limitation of each claim (e.g., the Super Safety itself does not include a hammer or a disconnector). Among other non-infringement reasons (which are reserved), the Super Safety does not meet the "whereupon in a forced reset semi-automatic mode" limitation of claims 15 and 20. *See TEK Global, S.R.L. v. Sealant Sys. Int'l*, 920 F.3d 777, 784 (Fed. Cir. 2019) (infringement requires each claim limitation to be found in an accused product). Reviewing both claims, the cam must be movable between a first position (at which the cam lobe does not force the trigger into the set position, per claim 20) and a second position (at which the cam lobe does force the trigger into the set position). Per claims 15 and 20, the cam must be in the first position when the mechanism is in standard semi-automatic mode, and the cam must be in the second position when the mechanism is in the forced reset semi-automatic mode. However, when the Super Safety is in the active reset mode (which ABC presumably equates to the forced reset semi-automatic mode), the cam is not constrained to be only in the second position; indeed, the cam must be in the first position for the firearm to fire. Instead the cam rotates/cycles between the first position and the second position as the bolt carrier shuttles rearward and forward.

  Furthermore, claims 15 and 20 state that "rearward movement of the bolt carrier causes rearward pivoting of said hammer *such that said disconnector hook is prevented from catching said hammer hook . . . .*" However, the rearward bolt carrier movement does not prevent the disconnector hook from catching the hammer hook (even overlooking that the Super Safety does not include the disconnector or the hammer, as noted above); indeed, the rearward pivoting of the hammer *causes* the disconnector hook to *catch* the hammer hook, and no further rearward pivoting of the hammer *prevents* the disconnector hook from catching the hammer hook. Stated alternatively, when the cam is in the second position (where the cam lobe forces the trigger toward the set position), there is no rearward pivoting of the hammer – by the time the cam reaches the second position, the hammer has finished its rearward pivoting

  Additionally with respect to claim 20, that claim recites a safety selector and a cam as separate elements, and the specification and drawings clearly show those components as distinct, rather than being one and the same structure. The Super Safety does not include a separate safety selector that moves between safe, standard semi-automatic, and forced reset semi-automatic positions; instead that function is performed by the Super Safety cam, which (as noted) is claimed as a separate element from the safety selector. Furthermore, because it is the safety selector that selects the standard semi-automatic position or the forced reset semi-automatic position, and because the Super Safety does not include the claimed safety selector, neither "whereupon" limitation is met.

  Regarding the indirect-infringement accusations, both induced infringement and contributory infringement require knowledge of the relevant patent. *Commil USA, LLC v. Cisco Sys.*, 575 U.S. 632, 639 (2015). Yet, despite requesting sales information from July 16, 2024, ABC provided no indication

Mr. Glenn D. Bellamy
May 8, 2025
Page 3 of 3

that any of our clients knew of the Patent as early as its date of issuance. Indeed, as far as we can tell from your March 31 and April 1, 2025 letters, those letters were the first time that their recipients obtained knowledge of the Patent.

Furthermore, induced infringement requires knowledge that the induced acts constitute infringement. *Commil USA*, 575 U.S. at 639. However, as explained above, the Super Safety *does not* infringe the Patent claims identified in ABC's letters; thus, our clients assuredly do *not* have knowledge that any induced acts (presumably installing the Super Safety in a firearm) would result in infringement.

Similarly, contributory infringement requires the accused component to have no substantial non-infringing uses and for the alleged infringer to have knowledge of this. But as explained above, the Super Safety does not infringe the asserted Patent claims, which means the Super Safety has substantial non-infringing uses; it also means that our clients lack knowledge that the Super Safety has no substantial non-infringing uses.

For the above-discussed reasons, our clients decline to provide the financial information demanded in ABC's letters and to cease selling the Super Safety. If you have any further information that is relevant to the issues raised in ABC's letters or our reply, we will be happy to consider them.

Sincerely,

**EMERSON, THOMSON & BENNETT, LLC**

*/s/ John M. Skeriotis*

John M. Skeriotis